# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 01-467

Segundo Mariano, Appellant,

v.

Anthony J. Principi,
Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Argued May 13, 2003                      Decided    October 22, 2003  )

*Ronald L. Smith*, with whom *Landon E. Overby* (non-attorney practitioner) was on the pleadings, both of Washington, D.C., for the appellant.

*Mary Flynn*, with whom *Tim S. McClain*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Joan E. Moriarty*, Deputy Assistant General Counsel; and *Ari Nazarov* were on the pleadings, all of Washington, D.C., for the appellee.

Before KRAMER, *Chief Judge*, and IVERS and STEINBERG, *Judges*.

KRAMER, *Chief Judge*: The appellant appeals, through counsel, a November 17, 2000, Board of Veterans' Appeals (Board or BVA) decision that denied an increased disability rating for his service-connected residuals of a gunshot wound (GSW) to the left shoulder, affecting Muscle Group (MG) I, currently rated as 10% disabling. Record (R.) at 2, 18-22, 24. The appellant and the Secretary have filed briefs, and the appellant has filed a reply brief. Pursuant to a Court order, the appellant has filed a supplemental brief and the Secretary has filed a response addressing, inter alia, (1) several questions regarding the enactment of the Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 401, 116 Stat. 2820, 2832 (VBA), and (2) whether there is any binding administrative precedent as to the criteria for receipt of a 20% disability rating under 38 C.F.R. § 4.71a, Diagnostic Code (DC) 5201 (2002). The parties also have filed, pursuant to another Court order, supplemental memoranda addressing the impact, if any, on this case of the Court's recent order

in *Roberson v. Principi*, 17 Vet.App. 135 (2003) (per curiam order). This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a). For the reasons that follow, the Court will affirm in part and will reverse in part and vacate in part the Board's decision and remand several matters for readjudication consistent with this opinion.

## I. Background

The appellant served on active duty from March 1943 to February 1946. R. at 2, 32, 48. During that service, he was hospitalized from December 7, 1944, to December 31, 1944, as a result of a GSW to the left shoulder that he sustained from enemy rifle fire. R. at 32, 34. (The appellant also sustained a GSW to his right upper thigh and was hospitalized from April 1945 to June 1945. No issue with respect to that right-upper-thigh GSW is on appeal here.) In August 1954, the appellant submitted an application for VA compensation or pension for, inter alia, the GSW to his left shoulder. R. at 36-38. In a March 1956 decision, a VA regional office (RO) awarded service connection for, inter alia, the appellant's through-and-through GSW to the left shoulder region (minor) and assigned a 10% disability rating under the 1945 VA Schedule for Rating Disabilities, DC 5301, effective July 6, 1954. R. at 61-62; *see* R. at 55-59 (June 1955 VA medical examination report in which examiner, inter alia, identified trapezius as muscle involved); 1945 VA Schedule for Rating Disabilities, DC 5301 (injury to MG I of which trapezius is part). The appellant did not appeal that RO decision.

In September 1972, the appellant in essence sought an increased rating for his service-connected GSW to the left shoulder. R. at 67, 68-69. On January 23, 1973, the appellant was afforded a VA medical examination. R. at 71-75 (examiner diagnosed, inter alia, pair of scars, left shoulder, allegedly residuals of GSW, through-and-through, with minimal deformity, and with limitation of motion (LOM) of left shoulder joint, with injury to MG IV). In a March 1, 1973, decision, the RO confirmed and continued the assigned 10% rating but "modifi[ed]" the March 1956 RO decision to reflect that the appellant's service-connected through-and-through GSW to the left shoulder affected MG IV and was to be rated under 38 C.F.R. § 4.73, DC 5304 (1972). R. at 77-78 (noting that disability was rated formerly under DC 5301). The appellant did not appeal that RO decision.

On November 9, 1983, VA received private medical records (dated August 19, 1983) relating to the appellant. R. at 80-81. Subsequently, the appellant, on January 12, 1984, underwent a VA medical examination. R. at 84-88 (examiner diagnosed, inter alia, left-shoulder through-and-through GSW with injury to MG IV). In a February 23, 1984, decision, the RO confirmed and continued the appellant's 10% disability rating. R. at 90. The appellant appealed that RO decision (*see* R. at 93-95, 97-98), and the BVA, in an April 1, 1985, decision, denied an increased disability rating for residuals of a GSW to the left-shoulder region, MG IV (R. at 101-06).

In July 1996, the appellant sought, inter alia, an increased rating for his service-connected left-shoulder GSW residuals. R. at 116. (At that time, the appellant also in essence requested a rating of total disability based on individual unemployability (TDIU)). The RO, in September 1996, denied the appellant's claim because he had failed to report for a scheduled VA medical examination. R. at 124-26; *see* R. at 122 (noting appellant's failure to report), 128 (October 1996 letter to VA from appellant in which he explained his failure to report). On November 19, 1996, the appellant was afforded a VA medical examination. *See* R. at 131 (November 1996 letter to appellant from RO in which RO notified him that examination in connection with his request for increased rating for his service-connected GSW residuals was being rescheduled). In the report of that examination, the examiner, who had been requested to assess the residuals of the appellant's GSW (*see* R. at 120, 131), identified MG I as the muscles penetrated in the appellant's left shoulder (R. at 133: muscles examination report); recorded the appellant's left-shoulder strength as "fair to good" (R. at 135: muscles examination report), his complaints of pain, swelling, and limited left-shoulder range of motion (ROM) (R. at 138: bones examination report), and his ROM in his left shoulder to be flexion 0-90°, extension 0-25°, abduction 0-75°, and adduction 0-40° (R. at 142: joints examination report); and diagnosed the appellant as having hypertrophic degenerative arthritis of the left shoulder and a shoulder muscle injury but made no comment as to any relationship between arthritis and the appellant's GSW (R. at 135 (muscles examination report), 143 (joints examination report); *see* R. at 145 (radiographic report listing impression of hypertrophic degenerative changes, left shoulder, and negative for fractures and metallic foreign bodies (MFBs)); *see also* R. at 140 (bones examination report reflecting diagnosis of, inter alia, no fractures)). In an April 23, 1997, decision, the RO continued the 10% disability rating for the appellant's service-connected left-shoulder

through-and-through GSW, with injury to MG IV. R. at 151-54. The appellant filed a Notice of Disagreement (NOD) as to that RO decision (R. at 159); the RO issued to him a Statement of the Case (SOC) (R. at 164-76); and the appellant filed a Substantive Appeal in which he, inter alia, in essence asserted that the November 1996 VA medical examination was inadequate (R. at 178-79).

Subsequent to receiving the appellant's Substantive Appeal, VA determined that the appellant should be afforded a new medical examination "to ascertain the nature, severity, and etiology of any [left-shoulder] disorders" and to determine the appellant's left-shoulder functional loss. R. at 181; *see* R. at 183-84. The appellant underwent that VA medical examination on January 20, 1998. During that examination, the examiner determined the appellant's left-shoulder ROM to be forward flexion 0-90°, abduction 0-130°, external rotation 0-60°, and internal rotation 0-60°. R. at 193, 198. Further, the muscles examiner recorded the "exact muscles injured" in the appellant's left shoulder as MG IV and both the muscle strength and loss of muscle function in the appellant's left shoulder as "moderate muscle disability." R. at 204-05, 207-09. The VA examiner, after noting that he had reviewed the appellant's claims file, diagnosed the appellant as having residuals of GSW, left shoulder (R. at 194, 199, 206, 210), and opined that "[t]here ha[d] been no progressive deformity/deterioration of the [appellant's service-connected] disabilities compared to the . . . examination [of November 1996]" (R. at 206, 210). A radiographic report from that January 1998 examination reflects an impression of minimal degenerative arthritis, left shoulder. R. at 211.

Following the January 1998 VA medical examination, the RO issued to the appellant a Supplemental SOC (SSOC). R. at 224-35. In August 1998, the appellant, through his then representative, submitted to the Board argument as to why he should be awarded an increased rating for his service-connected left-shoulder GSW residuals, with injury to MG IV, rated as 10% disabling; specifically, for the first time, he contended that his service-connected left-shoulder condition "would be more correctly rated, at this time, under [DC] 5201 (Arm, limitation of motion of: At shoulder level (20%)[)]," based upon the January 1998 VA examination during which his left-shoulder forward flexion was measured as 0-90°. R. at 237-38. Later that month, the BVA, inter alia, remanded to the RO for further development the appellant's left-shoulder-increased-rating claim. The Board specifically ordered, inter alia, that the appellant be afforded a comprehensive medical examination; the appellant's claims folder and a separate copy of the BVA's remand be made

available to the examiner for review before the examination; the examiner evaluate the appellant's GSW residuals, identify any MG involvement, and state specifically whether there is evidence of injury to MG I, MG IV, or both; and the examiner set out active and passive shoulder ROMs and state whether there is evidence of any atrophy, weakness, incoordination, fatigue, swelling, sensory impairment, bone or joint deformity, arthritis, neurologic impairment, or other GSW residuals. If the examination report was inadequate for rating purposes, the RO was directed to return the report to the examiner. R. at 259-63.

Pursuant to the August 1998 BVA remand, the appellant, on December 3, 1998, underwent a VA medical examination. In the report of that examination, the examiner recorded that he had determined the appellant's left-shoulder ROM to be flexion 0-120° (active), 0-130° (passive); extension 0-30° (active), 0-40° (passive); abduction 0-110° (active), 0-140° (passive); internal rotation 0-90° (active and passive); and external rotation 0-70° (active and passive). R. at 273, 278. The examiner diagnosed the appellant as having residuals, GSW, left shoulder and arm, and opined, following his "Diagnosis: residuals, GSW, [left] shoulder," that the appellant has left-shoulder LOM, especially to abduction and flexion and, therefore, "is moderately limited" in activities involving over-head motions, such as removing a shirt; that MGs I and IV show no gross incapacitation; and that the appellant's "LOM is due primarily . . . to degenerative [osteoarthritis]." R. at 276, 282. The examiner also noted (apparently subsequent to examining the appellant and recording his findings) that he had reviewed the appellant's claims file on "2/4/99." R. at 272 (handwritten notation), 283 (same). Subsequent to the RO, in September 1999, deferring a decision on the appellant's claim until the examiner "specifically state[d]" whether there is evidence of injury to MG I, MG IV, or both (R. at 290), the examiner, in a September 30, 1999, handwritten addendum to his previous examination report, stated that "[t]here is only evidence . . . of [an] injury to MG I but not [evidence of an injury] to MG IV" (R. at 276; see R. at 294).

In an October 23, 1999, decision, the RO, inter alia, continued the 10% disability rating for the appellant's service-connected left-shoulder GSW residuals. R. at 303-08 (listing DC as 5304-5301); see R. at 294-99 (October 1999 SSOC to same effect). In December 1999, the RO received private medical records (dated August 1996) relating to the appellant; those records reflect the examiner's notation that the appellant had "[l]imited [ROM and] c[ould not] lift [his arm] above

5

shoulder level." R. at 313. The RO, in a May 2000 decision, again denied the appellant's claim. R. at 323-26; *see* R. at 318-20 (May 2000 SSOC to same effect).

In the November 17, 2000, Board decision on appeal, the BVA noted that the appellant is right handed and found that, therefore, his left arm is his minor extremity and the criteria for the nondominant extremity would be applied. R. at 18. The BVA then found that the preponderance of the competent evidence (the evidence) is against assignment of a higher evaluation for residuals of a GSW to the left upper extremity. *Id*. As a basis for that ultimate finding, the Board made, inter alia, the following three preliminary findings. First, the Board found that, with respect to the MGs in the appellant's left shoulder, the evidence shows that the residuals of the GSW to the left shoulder involve only MG I and not an injury to MG IV (Preliminary Finding 1). R. at 18-19. Second, the BVA found either that the appellant had arm motion above shoulder level (i.e., his arm motion was not limited to at or below shoulder level) or that, if he had arm LOM at or below shoulder level, such LOM was due primarily to arthritis (Preliminary Finding 2). R. at 20-21. Third, the Board found that the evidence reveals that osteoarthritis of the left shoulder is not a residual of the appellant's in-service GSW in the left shoulder (Preliminary Finding 3). R. at 21.

In making Preliminary Finding 1, the Board relied on the opinion of the June 1955 VA examiner who specifically identified a muscle (the trapezius) in MG I and the opinion of the December 1998 VA examiner who also noted sole involvement of MG I. R. at 18-19. In making Preliminary Finding 2, the Board stated that

> [the appellant's private physician, in the report of an August 1996 examination] noted that the [appellant] could not lift his arm above shoulder level. VA examination reports also reveal that the [appellant] has some [LOM] in the left arm. Specifically, in November 1996, forward flexion and abduction were to 90 and 75 degrees, respectively. In January 1998, forward flexion was to 90 degrees whereas abduction was to 130 degrees. The most recent evidence, the December 1998 VA examination report, shows that the [appellant] was able to lift his arm above shoulder level[, i.e., active forward flexion was to 120 degrees and active abduction was to 110 degrees]. Such degree of motion limitation does not warrant assignment of even a compensable evaluation under [DC] 5201. . . . A review of past examination reports and other evidence includes both findings that the [appellant] was and was not able to lift his arm to at least shoulder level. However, the December 1998 VA examiner considered the record and noted that the [appellant's] left arm [LOM] was primarily due to degenerative arthritis.

6

R. at 20-21.

In making Preliminary Finding 3, the Board considered evidence, including x-rays, showing (1) degenerative arthritis but not linking such to the appellant's in-service GSW (*see* R. at 133-45 (November 1996 VA examinations), 277-82 (December 1998 VA examination)) and (2) minimal degenerative changes but no traumatic residuals (*see* R. at 211 (January 1998 x-ray)).  R. at 20-21. Specifically, the Board stated that the November 1996 examiner "did not relate degenerative arthritis to the [appellant's] in-service trauma" and that the December 1998 examiner "did not relate [arthritis] to the [GSW]."  R. at 21.

The Board denied, therefore, the appellant's claim for an increased disability rating for his service-connected residuals of a GSW to the left shoulder, affecting MG I.  R. at 24.  The appellant timely appealed that November 2000 Board decision to this Court.

## II.  Analysis
## A.  Preliminary Matters

In his brief, the appellant expressly limits his appeal to his left-shoulder-GSW-residuals claim, and counsel for the appellant stated at oral argument that, on appeal, the appellant has abandoned his claims for TDIU and an extraschedular rating.  Accordingly, the Court will consider those claims abandoned.  *See Ford v. Gober*, 10 Vet.App. 531, 535 (1997); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (issues or claims not argued on appeal are considered abandoned); *Bucklinger v. Brown*, 5 Vet.App. 435, 436 (1993).  Counsel for the appellant also stated that the appellant was withdrawing his argument, as put forth in his briefs, for staged ratings; therefore, the Court will not address that argument.  Further, the Court notes that the Board expressly found and the parties do not contest that the appellant's left arm is his minor arm (*see* R. at 18; Appellant's Brief (Br.) at 12); therefore, the following analysis is based on the rating criteria for the minor, or nondominant, arm (*see* 38 C.F.R. § 4.69 (2002)).

The Secretary has prescribed regulations in 38 C.F.R. §§ 4.40-4.73 (2002) for assessing disability ratings for the musculoskeletal system.  The Court notes that, as the Board pointed out (R. at 9), the rating criteria for MG injuries were changed, effective July 1997.  *See* Schedule for Rating Disabilities; Muscle Injuries, 62 Fed. Reg. 30,235 (June 3, 1997).  For purposes of this

7

appeal, it appears that those 1997 amendments made no substantive changes to the DCs for MG injuries. *Compare* 38 C.F.R. §§ 4.55, 4.56 (2002), *with* 38 C.F.R. §§ 4.55, 4.56 (1996).

### B. December 1998 VA Examination and *Stegall v. West*

In its August 1998 decision, the Board specifically ordered that on remand, inter alia, "[t]he claims folder and a separate copy of this remand MUST be made available to the examiner for review before the examination." R. at 260-61. On the December 3, 1998, VA joints examination worksheet completed on the date of the examination, the VA examiner apparently noted "C-file to follow"; it appears that, at some later date, the VA examiner added to that worksheet "C-file reviewed 2/4/99." R. at 272. Therefore, the specific remand instruction that the appellant's claims file be made available to the VA examiner prior to the examination was not followed.

Pursuant to *Stegall v. West*, the Board errs when it "fail[s] to insure compliance" with the terms of the "remand orders of the Board or this Court." *Stegall*, 11 Vet.App. 268, 271 (1998). Here, those terms were not satisfied, and "the Court cannot say, based on the record before it, that the appellant here has not been harmed." *Id.*; *see* 38 U.S.C. § 7261(b)(2); *Woods v. Gober*, 14 Vet.App. 214, 222-23 (2000) (holding that *Stegall*, *supra*, required remand in order for Secretary to comply with prior remand orders). Accordingly, the Court cannot conclude that VA complied – or even "substantially complied" – with the Board's remand order. *Dyment v. West*, 13 Vet.App. 141, 146-47 (1999), *aff'd*, 287 F.3d 1377 (Fed. Cir. 2002). Generally, reliance on such a noncomplying examination in adjudication, especially where it is the principal evidence upon which the Board relied, is not permissible. *See Powell v. West*, 13 Vet.App. 31, 35 (1999) (holding that Board erred in relying on inadequate 1997 examination to deny rating increase when 1995 examination, inter alia, supported requested rating). However, the Court does not believe that the nature of the noncompliance here renders unreliable the ROM measurements taken regarding the appellant's left shoulder because those measurements involve scientific tests and are not conclusions drawn by the VA examiner that would be affected by the examiner's review of the claims file. Therefore, the Court will review the Board decision on appeal based on the assumption that the December 1998 ROM objective measurements are valid. In contrast, the flaw in the December 1998 examination undermines any of the examiner's conclusions as to etiology and renders such conclusions of questionable probative value because the examiner did not review the claims file prior to conducting

the examination. *See* 38 C.F.R. § 4.1 (2002) (inter alia, "[i]t is . . . essential, both in the examination and in the evaluation of disability, that each disability be viewed in relation to its history").

Finally, with respect to this December 1998 VA examination, the Court notes that it is not at all clear from the record on appeal (ROA) why VA concluded, in light of the unrebutted evidence then of record, that it was necessary to obtain that medical opinion. Because it would not be permissible for VA to undertake such additional development if a purpose was to obtain evidence against an appellant's case, VA must provide an adequate statement of reasons or bases for its decision to pursue further development where such development reasonably could be construed as obtaining additional evidence for that purpose. *See* 38 U.S.C. § 7104(d)(1).

## C. Preliminary Finding 1

As to the appellant's MG injury, the Board found "that the residuals of the [GSW] to the left shoulder involve only an injury to [MG] I and not an injury to [MG] IV." R. at 19. To the extent that the BVA determined that MG IV is not involved, the Board failed to address the following. *See* 38 U.S.C. § 7104(a), (d)(1); *Charles v. Principi*, 16 Vet.App. 370, 373 (2002) (Board is required to provide written statement of reasons or bases for findings and conclusions on all material issues of fact and law presented on record; statement must be adequate to enable claimant to understand precise basis for Board's decision, as well as to facilitate review in this Court); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). First, the Board did not consider whether the award of service connection for MG IV is protected because it has been in effect for more than 26 years, far longer than the 10 years required in order for service connection to be protected under 38 U.S.C. § 1159 and 38 C.F.R. § 3.957 (2002). Second, the BVA did not consider whether, based on the period between the March 1973 attribution of the 10% rating to MG IV and the October 1999 apparent change in attribution of that 10% rating to MG I, the appellant has a protected 10% rating for MG IV because that rating has been in effect for more than the 20 years required under 38 U.S.C. § 110 and 38 C.F.R. §§ 3.951(b) and 4.55(d) (2002). Third, if the MG IV injury is not protected under those provisions, the Board failed to address the evidence that supports the involvement of MG IV. *See* R. at 71-75 (examiner indicated injury was to MG IV), 84-88 (same), 204-05 (same).

Moreover, in the process of making its MG determination, the Board erred when it found that (1) "[t]he December 1998 VA examiner reviewed the [appellant's] claims file" and (2) "it does not appear that examiners identifying [MG] IV involvement reviewed the entire claims file." R. at 18. The former finding is incomplete because the ROA shows that the December 1998 VA examiner reviewed the claims file two months after he examined the appellant and recorded his findings in December 1998. *See* R. at 283 ("C-file reviewed 2/4/99"). The latter finding is erroneous (*see* part II.D, below) because the January 1998 VA muscles examiner listed MG IV as the "exact muscles injured" and noted that he had reviewed the appellant's claims file. *See* R. at 204. Hence, the Court will set aside as clearly erroneous these two BVA findings because neither has a plausible basis in the record. *See* 38 U.S.C. § 7261(a)(4); *Pentecost* and *Parker*, both *infra*.

Accordingly, for the reasons discussed above, the Court will remand the MG matter for the Board to conduct proper fact finding and provide an adequate statement of reasons or bases for its decision.

## D. Review of Board Factfinding

The assignment of a VA disability rating in accordance with 38 U.S.C. § 1155 based on the degree of impairment from a service-connected disability is a factual determination. *See Fleshman v. Brown*, 9 Vet.App. 548, 552 (1996), *aff'd*, 138 F.3d 1429 (Fed. Cir. 1998); *Johnson v. Brown*, 9 Vet.App. 7, 9 (1996); *Francisco v. Brown*, 7 Vet.App. 55, 57 (1994); *Lovelace v. Derwinski*, 1 Vet.App. 73, 74 (1990). Pursuant to 38 U.S.C. § 7261(a)(4), as amended by VBA § 401, the Court is directed to review BVA findings of fact under a "clearly erroneous" standard. Under that standard, the Court may not overturn a Board fact determination where there is a "plausible basis in the record" for it. *Pentecost v. Principi*, 16 Vet.App. 124, 129 (2002); *Parker v. Principi*, 15 Vet.App. 407, 410 (2002). Specifically, section 7261 provides in pertinent part:

> (a) In any action brought under this chapter, the Court of Appeals for Veterans Claims, to the extent necessary to its decision and when presented, shall –
>
> . . .
>
> (4) in the case of a finding of material fact adverse to the claimant made in reaching a decision in a case before the Department with respect to benefits under laws administered by the Secretary, hold unlawful and set aside or reverse such finding if the finding is clearly erroneous.

10

(b) In making the determinations under subsection (a), the Court shall review the record of proceedings before the Secretary and the Board . . . pursuant to section 7252(b) of this title and shall –

(1) take due account of the Secretary's application of section 5107(b) of this title.

38 U.S.C. § 7261(a)(4), (b)(1); *see* 38 U.S.C. § 5107(b) (when there is approximate balance of positive and negative evidence regarding any issue material to determination of matter, Secretary shall give "benefit of the doubt" to claimant). In this regard, the outcome of the Board's application of the section 5107(b) equipoise standard is a factual determination that this Court reviews under the "clearly erroneous" standard. *See Roberson*, 17 Vet.App. at 146 ("[The Court] is not authorized to make the determination as to whether the evidence is in equipoise and apply the benefit[-]of[-]the[-]doubt doctrine; the Court is empowered only to ensure that the Secretary's determination in that regard is not clearly erroneous."). Indeed, Congress, by adding section 7261(b)(1), directed that the Court, "[i]n making the determinations under subsection (a)," including a determination as to whether a finding of material fact adverse to the claimant is clearly erroneous, shall take due account of the Secretary's application of section 5107(b)'s equipoise standard. 38 U.S.C. § 7261(b)(1); *see* 38 U.S.C. § 7261(a)(4).

### 1. Preliminary Finding 3

Undertaking that mandated review in this case, the Court first will review the Board's factual determination that the evidence of record preponderated in support of a finding that the appellant's osteoarthritis is not a residual of his service-connected GSW. In this regard, reviewing as did the Board the reports of the appellant's medical examinations, the Court notes the following. First, in an August 1996 examination report, the appellant's private physician essentially attributed the appellant's left-shoulder LOM (not able to lift his arm above shoulder level) to his service-connected GSW but was silent as to arthritis. *See* R. at 313-14. Next, in the report of a November 1996 examination that was conducted in connection with the appellant's request for an increased rating for his service-connected left-shoulder GSW residuals, a VA examiner, who had been requested to assess any such residuals, attributed the appellant's left-shoulder LOM to degenerative arthritis but made no comment specifically as to any relationship between the GSW and arthritis. *See* R. at 141-43. Further, during a January 1998 VA examination that was conducted pursuant to the instruction

"to ascertain the nature, severity, and etiology" (R. at 181) of any of the appellant's left-shoulder disabilities, the examiner determined that the appellant's LOM is a residual of his service-connected GSW and, after reviewing, inter alia, a radiographic report, determined that his service-connected disabilities had not undergone any progressive deformity or deterioration since the November 1996 examination. *See* R. at 194, 206. Finally, in a December 1998 examination report, a VA examiner, who had been instructed specifically by a Board remand to evaluate any GSW residuals, opined that the appellant's LOM is due primarily to degenerative arthritis but was silent as to any specific relationship between the appellant's GSW and arthritis. *See* R. at 276.

This review of the examination reports of record shows that two examiners (August 1996 and January 1998) attributed the appellant's LOM to his service-connected GSW residuals but were silent as to arthritis and two examiners (November 1996 and December 1998) attributed the appellant's LOM to arthritis but were silent as to any relationship between the appellant's GSW and arthritis. As reflected by this review, there is absolutely no medical evidence in the ROA to support the Board's determination that the appellant's osteoarthritis of the left shoulder is not a residual of his service-connected GSW; indeed, none of the medical examination reports addressed that question. Accordingly, the Court concludes that there is no plausible basis in the record for the BVA's factual determination that the evidence preponderated in support of a finding that the appellant's arthritis is not a residual of his service-connected GSW. *See Roberson*, *Pentecost*, and *Parker*, all *supra*. The Court thus holds that the Secretary's application of the section 5107(b) equipoise standard in reaching that factual determination was clearly erroneous under section 7261(a)(4) and will set it aside. *See* 38 U.S.C. § 7261(a)(4), (b)(1); *Roberson*, *supra*. The Court, however, will not reverse that finding because there is no evidence (medical or otherwise) in the current ROA on which any finding on such a secondary service-connection question could be based. Certainly, that question is presented by this record, and, on remand, the Board must, for purposes of any future rating under DC 5201, take the steps necessary to develop the record as to the extent, if any, to which the appellant has arthritis that is secondary to his service-connected GSW residuals. *See* 38 C.F.R. § 3.310(a) (2002) (providing for secondary service connection); *see also* 38 U.S.C. § 5103A; 38 C.F.R. § 3.159(c) (2002).

## 2. Preliminary Finding 2

Pursuant to DC 5201, the following ratings apply to LOM of the arm:

| | Rating Major | Minor |
|---|---|---|
| 5201     Arm, limitation of motion of: | | |
| To 25° from side................................................... | 40 | 30 |
| Midway between side and shoulder level............. | 30 | 20 |
| At shoulder level................................................. | 20 | 20 |

38 C.F.R. § 4.71a, DC 5201; *see* 38 C.F.R. § 4.71a, Plate I (Plate I) (2002) (illustrating, inter alia, flexion and abduction ranges as 0-180° with "[a]t shoulder level" as 90°). In connection with whether the appellant had arm motion above shoulder level (i.e., his arm motion was not limited to at or below shoulder level) or whether, if he had arm LOM at or below shoulder level, such LOM was due primarily to arthritis, the Board stated:

> [The appellant's private physician, in the report of an August 1996 examination] noted that the [appellant] could not lift his arm above shoulder level. VA examination reports also reveal that the [appellant] has some [LOM] in the left arm. Specifically, in November 1996, forward flexion and abduction were to 90 and 75 degrees, respectively. In January 1998, forward flexion was to 90 degrees whereas abduction was to 130 degrees. The most recent evidence, the December 1998 VA examination report, shows that the [appellant] was able to lift his arm above shoulder level[, i.e., active forward flexion was to 120 degrees and active abduction was to 110 degrees]. Such degree of motion limitation does not warrant assignment of even a compensable evaluation under [DC] 5201. . . . A review of past examination reports and other evidence includes both findings that the [appellant] was and was not able to lift his arm to at least shoulder level. However, the December 1998 VA examiner considered the record and noted that the [appellant's] left arm [LOM] was primarily due to degenerative arthritis.

R. at 20-21.

### a. Arm motion above shoulder level

To the extent that the Board found, by a preponderance of the evidence, that the appellant had left-arm motion above shoulder level based solely on flexion measurements, the Court concludes that there is no plausible basis in the record for that determination. *See Roberson*, *Pentecost*, and *Parker*, all *supra*. In this regard, the Court notes that there are two VA examinations that reflect at-or-below-shoulder-level flexion measurements for the appellant (November 1996 and January 1998 - 90°) and one VA examination that reflects an above-shoulder-level flexion measurement (December 1998 -

120°) and that it is unclear what the private physician was measuring, further adding to the state of doubt as to this question. The Court thus holds that the Secretary's application of the section 5107(b) equipoise standard in reaching any factual determination based on flexion was clearly erroneous under section 7261(a)(4) and will reverse it. *See* 38 U.S.C. § 7261(a)(4), (b)(1); *Roberson*, *supra*. To the extent that the BVA found, by a preponderance of the evidence, that the appellant had left-arm motion above shoulder level based on abduction, the Court concludes that there is a plausible basis in the record for that determination. *See Roberson*, *Pentecost* and *Parker*, all *supra*. In this regard, the Court notes that there are two VA examinations that reflect above-shoulder-level abduction measurements for the appellant (January 1998 - 130° and December 1998 - 110°) and one VA examination that reflects an at-or-below-shoulder-level abduction measurement (November 1996 - 75°) and that it is unclear what the private physician was measuring. Thus, the Court holds that the Secretary's application of the section 5107(b) equipoise standard in finding arm motion above shoulder level based on abduction was not clearly erroneous and will not set it aside or reverse it. *See* 38 U.S.C. § 7261(a)(4), (b)(1); *Roberson*, *supra*.

### b. LOM due primarily to arthritis

To the extent that the Board found that, if the appellant had LOM at or below shoulder level, any such LOM was due primarily to arthritis, rather than his GSW residuals, the Court concludes that there is no plausible basis in the record for that determination. *See Roberson*, *Pentecost*, and *Parker*, all *supra*. Because there is medical evidence in the ROA on this question (as opposed to the question whether the appellant's arthritis is a GSW residual, *see* ante at __, slip op. at 11-12), the Court must examine all of that evidence of record in order to determine whether to set aside or to reverse the Board's determination on this question. *See* 38 U.S.C. § 7261(b) (directing Court, in making determinations under section 7261(a), to "review the record of proceedings before the Secretary and the Board"); *see also Homan v. Principi*, 17 Vet.App. 1, 3-4 (2003) (per curiam order) (holding "record of proceedings" referred to in amended section 7261(b) consists of ROA as designated by parties and transmitted to Court pursuant to Rules 10 and 11 of Court's Rules of Practice and Procedure).

In this regard, in an August 1996 examination report, the appellant's private physician essentially attributed the appellant's left-shoulder LOM (not able to lift his arm above shoulder level)

14

to his service-connected GSW but was silent as to arthritis. *See* R. at 313-14. Next, in the report of a November 1996 examination, a VA examiner did not unambiguously attribute the appellant's LOM to any condition. Specifically, in a muscles examination, the examiner found injury to MG I and diagnosed the appellant with hypertrophic degenerative arthritis in his left shoulder and a shoulder muscle injury (*see* R. at 133-35); in a bones examination, the examiner recorded, inter alia, that the appellant complained of "pain [and] swelling, limited ROM of left shoulder" (R. at 138) and diagnosed no fractures (*see* R. at 140); and in a joints examination, the examiner recorded ROM measurements, diagnosed hypertrophic degenerative arthritis in the appellant's left shoulder, and attributed the appellant's left-shoulder LOM to degenerative arthritis but made no comment specifically as to any relationship between the GSW and arthritis (*see* R. at 141-43). Further, during a January 1998 VA examination that was conducted pursuant to the instruction "to ascertain the nature, severity, and etiology" (R. at 181) of any of the appellant's left-shoulder disabilities, the examiner determined that the appellant's LOM is a residual of his service-connected GSW. *See* R. at 194. Finally, in a December 1998 examination report, a VA examiner, opined that the appellant's LOM is due primarily to degenerative arthritis. *See* R. at 276. As to that December 1998 report, the etiology conclusion reached by the examiner is, at best, of questionable probative value as was discussed in part II.B, above.

A review of these examination reports indicates that two examiners (August 1996 and January 1998) clearly attributed the appellant's left-shoulder LOM to his service-connected GSW residuals; one examiner (November 1996) either attributed the appellant's LOM to arthritis or is ambiguous on etiology; and one examiner (December 1998) in a flawed examination attributed the appellant's LOM to arthritis. Therefore, the evidence reflects two examination reports that are unambiguously favorable to the appellant on this question; one examination report that is at best ambiguous on this question; and one examination report that, although unfavorable to the appellant on this question, is of questionable probative value because the methodology was flawed. Thus, the Court holds that the Secretary's application of the section 5107(b) equipoise standard in finding that any LOM at or below shoulder level experienced by the appellant is due primarily to arthritis, rather than to his service-connected GSW residuals, was clearly erroneous and will reverse it. *See* 38 U.S.C. § 7261(a)(4), (b)(1); *Roberson*, *supra*.

15

**E. Meaning of DC 5201**

The question becomes, therefore, whether flexion not above shoulder level qualifies for a 20% disability rating under DC 5201. In this regard, although the appellant contended at oral argument that either flexion or abduction may be used to satisfy the criterion for a 20% rating under DC 5201 and the Secretary, in response to a briefing order, contended that "DC 5201 refers only to limitation of abduction" (Secretary's Response (Resp.) at 9-10), both parties agree that there appears to be no binding administrative precedent as to the criteria for receipt of a 20% disability rating under DC 5201 (Appellant's Supplemental Br. at 5; Secretary's Resp. at 10). Further, there appear to be three possible interpretations of DC 5201 insofar as the ROM measurement that is utilized for a disability rating: (1) as advanced by the Secretary, LOM as evidenced by abduction only; (2) LOM in all planes; or (3) LOM in any one plane.

The Court holds that the Secretary's proffered interpretation that DC 5201 is measuring abduction only is invalid for at least three reasons. *See* 38 U.S.C. § 7261(a)(3)(A). First, although the Secretary contends that DC 5201 utilizes only abduction, Plate I lists, inter alia, both abduction and flexion as shoulder-arm-motion measurements. *See* 38 C.F.R. § 4.71a, Plate I (picturing, for shoulder, flexion, abduction, external rotation, and internal rotation); *see also* 38 C.F.R. § 4.71 (measurement of ankylosis and joint motion); R. at 142 (November 1996 VA examination report reflecting left-shoulder ROM measurements for flexion, extension, abduction, and adduction), 193 (January 1998 VA examination report listing forward flexion, abduction, external rotation, and internal rotation), 273 (December 1998 VA examination report indicating ROM measured by flexion, extension, abduction, internal rotation, and external rotation). Second, although the immediately preceding DC (5200) explicitly refers to abduction for two ratings under that code, DC 5201 does not explicitly refer to any specifically identified type of ROM measurement. *Compare* 38 C.F.R. § 4.71a, DC 5200 (2002), *with* 38 C.F.R. § 4.71a, DC 5201. *See generally* 38 C.F.R. § 4.71a, DCs 5206, 5207 (2002) (both specifically listing type of motion measured for ratings). Third, the title of DC 5201 is "Arm, limitation of motion of." The title appears generic and does not specify limitation based on abduction. *Compare* 38 C.F.R. § 4.71a, DC 5201, *with* 38 C.F.R. § 4.71a, DC 5206 ("Forearm, limitation of flexion of"), *and* 38 C.F.R. § 4.71a, DC 5207 ("Forearm, limitation of extension of").

16

The two possible interpretations remaining, therefore, are limitation in all planes and limitation in any one plane. Although interpretation of whether DC 5201 must be construed to adopt the less restrictive of the two remaining interpretations is a matter that the Court could proceed to confront directly (*see* 38 U.S.C. § 7261(a)(1) (scope of review); *Otero-Castro v. Principi*, 16 Vet.App. 375, 380-83 (2002) (utilizing, inter alia, dictionary and regulatory definitions and limited (albeit not entirely clear) regulatory history as contained in Federal Register, Court interpreted requirements of 38 C.F.R. § 4.104, DC 7005, 7007 (2001), where Secretary had failed to establish clear rating criteria)), the Court nevertheless concludes that it is preferable for the Secretary to undertake the initial consideration of this matter. The Court, therefore, will put this ball squarely in the Secretary's court and require him to answer in the first instance, clearly and unambiguously, the questions presented by his regulation. *See Cotant v. Principi*, 17 Vet.App. 116, 130 (2003) (directing Secretary to "straighten[] out . . . complicated . . . web" created by his regulations); *McCormick v. Gober*, 14 Vet.App. 39, 45 (2000) (concluding that "remand [would] likely benefit the Court by producing 'a better record . . . for appellate review of the agency decision' and, further, may result in the 'agency self-correct[ing] and amend[ing] its ways[,'] which, in turn, would 'protect agency administrative authority' regarding the interpretation of its own issuances as well as 'promote judicial efficiency'" (quoting *Maggitt v. West*, 202 F.3d 1370, 1377 (Fed. Cir. 2000))); *accord Gordon v. Principi*, 15 Vet.App. 124, 127-28 (2001) (quoting *McCormick*, 14 Vet.App. at 45). In this regard, the Court notes that it appears that it could be very difficult for a claimant to satisfy the requirements of DC 5201 if limitation in every plane is required. If the Secretary adopts this interpretation, he must provide adequate support for such an interpretation. *See Brown v. Gardner*, 513 U.S. 115, 118 (1994) (interpretative doubt is to be resolved in appellant's favor); *see also Smith v. Brown*, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (rules for construing statutes apply equally to construing regulations).

Given the age of the appellant (*see* R. at 27 (listing appellant's date of birth as December 26, 1924)) and the length of time that the appellant's increased-rating claim has been pending (*see* R. at 116 (July 1996 claim for increase)), the Court expects that, within 90 days after the date of this opinion and on the evidence currently of record, the Board will reissue a decision as to the appellant's increased-rating claim. *See* U.S. VET. APP. R. 21 (extraordinary relief). Given this time guideline,

17

judgment will be entered and mandate will issue in this case 10 days after the date on which this opinion is issued. *See* U.S. VET. APP. R. 2 (suspension of rules), 35 (motion for reconsideration), 36 (entry of judgment), 41(a) (issuance of mandate). That time guideline does not extend to the question of the extent, if any, to which the appellant has arthritis that is secondary to his service-connected GSW residuals because VA must afford the appellant a medical examination as stated in part II.D.1, above.

### III. Conclusion

Based upon the foregoing analysis, the ROA, the parties' pleadings, and oral argument, the November 17, 2000, Board decision is AFFIRMED in part and is REVERSED in part and VACATED in part and several matters are REMANDED for readjudication consistent with this opinion. On remand, the appellant is free to submit additional evidence and argument on the remanded claim in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating, in case where Court remanded claim and declined to address appellant's additional arguments as to BVA error, that, on remand, appellant is free to raise such arguments to Board and Board must address those arguments). The Board shall proceed expeditiously, in accordance with section 302 of the Veterans' Benefits Improvements Act of 1994, Pub. L. No. 103-446, § 302, 108 Stat. 4645, 4658 (found at 38 U.S.C. § 5101 note) (requiring Secretary to provide for "expeditious treatment" of claims remanded by Board or Court).