**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 07-2670

NORMA VAN VALKENBURG, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued February 24, 2009                                    Decided July 24, 2009)

*Sean A. Ravin*, with *Kathy A. Lieberman*, both of Washington, D.C., for the appellant.

*Kerry J. Loring*, with whom *John H. Thompson*, Acting General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Brian B. Rippel*, Deputy Assistant General Counsel, all of Washington D.C., were on the pleadings for the appellee.

Before KASOLD, LANCE, and SCHOELEN, *Judges*.

KASOLD, *Judge*: Mrs. Norma Van Valkenburg, widow of World War II veteran Jack Van Valkenburg, appeals through counsel a September 6, 2007, decision of the Board of Veterans' Appeals (Board) that denied entitlement to an effective date earlier than March 7, 1995, for the award of dependency and indemnity compensation (DIC).

**I. OVERVIEW**

Mr. Jack Van Valkenburg served honorably on active duty in the U.S. Army from September 1942 until January 1946. He died on December 3, 1984, while in a VA hospital. Record (R.) at 18, 808. In July 1997, Mrs. Van Valkenburg was awarded DIC,[1] with an effective date of March 7, 1995, the date she indisputably filed a claim for DIC with the Secretary. Mrs.

---

[1]Mrs. Van Valkenburg's claim was initially denied by a regional office on the basis that although her husband died in a VA hospital, his death was not service connected and thus, she did not qualify for DIC benefits under 38 U.S.C. § 1151 (1995). R. at 179; *see also Brown v. Gardner*, 513 U.S. 115 (1994) (invalidating VA's pre-1997 regulations interpreting section 1151 to require claimants to demonstrate VA negligence). However, this initial denial was not the basis for the Board decision on review, and the Secretary has not argued that it could be a basis for denial of an earlier effective date.

Van Valkenburg contested the effective date and claimed entitlement to DIC benefits from the date of her husband's death.  R. at 1240.

Generally, the effective date of an award based on an original claim for DIC benefits is the date on which the application is received by the Secretary.  38 U.S.C. § 5110(a).  However, if the claim for entitlement to DIC benefits is filed with the Secretary within one year of the veteran's death and the claim is ultimately granted, then the effective date will be the first day of the month on which the veteran died.  38 U.S.C. § 5110(d)(1).  Additionally, if a claim is filed with the Social Security Administration (SSA) on a form jointly prescribed by the Secretary and the commissioner of SSA, such application "shall be deemed to be an application for benefits" to both agencies on the date the application is filed.  38 U.S.C. § 5105(b); 38 C.F.R. § 3.201 (2009).  Moreover, at oral argument, the Secretary advised the Court that any application form filed with SSA requesting survivor's benefits would suffice to warrant an effective date for DIC based on the date of the SSA application.

The ultimate issue before the Court is whether the Board clearly erred in its determination that the preponderance of the evidence supported its conclusion that Mrs. Van Valkenburg did not file an application for either DIC or survivor's benefits, with the Secretary or the commissioner, respectively, prior to March 7, 1995, and more specifically, within one year of the date of her husband's death.  For the reasons stated below, the decision of the Board will be reversed and the matters remanded for further adjudication consistent with this opinion.

## II.  DISCUSSION

### A. Application for DIC Filed with the Secretary

#### 1. Facts

There is no dispute that Mrs. Van Valkenburg sought certain VA benefits and completed numerous VA forms associated with the death of her husband and her receipt of benefits.  For example, she filed (1) an "Application for United States Flag for Burial Purposes" (R. at 163), (2) an "Application for Burial Benefits" (R. at 170), (3) releases of her husband's funds and personal effects (R. at 1514, 1517), and (4) a VA form addressing funeral arrangements (R. at 1519).  On December 12, 1984, she also filed a request for release of all VA medical records, indicating that the information was being requested for assistance with what appears to be social

services or social benefits. R. at 1510. There is conflicting evidence, however, regarding whether she submitted an application for DIC prior to March 1995.

The record reflects that on December 18, 1984, the Secretary forwarded Mrs. Van Valkenburg an application for DIC benefits (VA Form 21-534). R. at 166. The letter forwarding the DIC application states that Mrs. Van Valkenburg should complete it within one year of her husband's death. It also states that Mrs. Van Valkenburg could help speed the processing of her claim by furnishing a certified copy of the public or church record of her marriage. The record reflects that an application for DIC was received by the Secretary on March 7, 1995, with no earlier application reflected therein. On the other hand, the record contains a copy of the Van Valkenburg's "Certificate of Marriage Registration"–which was certified on November 30, 1984, and is in the record with other documents received by the Secretary in late 1984 and early 1985. However, the copy does not reflect specifically when it was received by the Secretary. R. at 161. Also, a November 24, 2000, letter from the Nashville regional office (RO) to an office of the Department of Defense (DOD) certifies that VA records indicate that Mrs. Van Valkenburg was receiving DIC and "has been receiving the benefit continuously since [the veteran's] death, December 3, 1984." R. at 1386.

Additionally, a box marked on Mrs. Van Valkenburg's March 1995 application for DIC indicates that she had not previously submitted an application for VA benefits,[2] although Mrs. Van Valkenburg has also repeatedly asserted during the processing of her claim for DIC and for an earlier effective date that she filed an earlier application with both the RO and the VA hospital where her husband died. The March 1995 application also reflects that Mrs. Van Valkenburg lists 1975 (after first writing "1985" and then writing the year "1975" over it), as the year in which her Social Security benefits began.

In the decision on appeal, the Board found that the preponderance of the evidence supported a finding that Mrs. Van Valkenburg did not file a claim for DIC directly with the Secretary prior to March 1995. Mrs. Van Valkenburg argues that the Board's finding is clearly erroneous and, alternatively, that the Board's statement of reasons or bases with regard to this finding is inadequate. The Secretary disputes both arguments.

---

[2] The question on the form related to this marked box is not limited to a claim for DIC and appears to inquire whether a claim for any VA benefits previously had been submitted.

3

*2. Analysis*

The record supports Mrs. Van Valkenburg's argument that the Board's statement is inadequate with regard to its finding that she did not file a claim for DIC with the Secretary prior to March 1995, and in particular within one year of her husband's death. Specifically, the Board failed to discuss the November 1984 certified copy of Mrs. Van Valkenburg's marriage certificate, leaving unanswered what import, or lack thereof, this has in the context of a December 1984 letter notifying her that she could help expedite the processing of a claim for DIC benefits if she supplied such a certification.

Additionally, the Board failed to discuss the possible import of the November 2000 Nashville RO letter to an office of the DOD, which *certified* that VA records indicated Mrs. Van Valkenburg was in receipt of DIC compensation continually since her husband's death. R. at 1386. This failure leaves much unanswered, including what relevance the letter might have on whether Mrs. Van Valkenburg submitted an application for DIC within one year of the death of her husband, and, inter alia, whether the application may have been lost by the Secretary or held at the RO that provided this certification such that it was under the impression that Mrs. Van Valkenburg was in receipt of DIC from the date of her husband's death because the form was located in the records file at the RO.

Moreover, the Board gave less weight to Mrs. Van Valkenburg's statements that she filed for DIC shortly after her husband's death largely because (1) she initially marked a box on her March 1995 DIC application indicating that she previously had not applied for VA benefits, and (2) there was no DIC application in the record pre-dating the March 1995 application. With regard to the former, the Board failed to discuss the conflict between the marking of the box indicating Mrs. Van Valkenburg previously had not applied for VA benefits and the fact that she clearly had applied for a U.S. flag and other VA burial benefits, and whether the marking of the box simply was a misunderstanding on her part. As to the latter, the Board failed to explain why it gave greater weight to the fact that an application for DIC dated prior to the March 1995 application was not in the file than it gave to Mrs. Van Valkenburg's testimony that she had filed for DIC earlier, even though there were known, significant errors associated with her VA file, as evidenced by the apparent November 2000 VA *mis*-certification that DIC had been paid to Mrs. Van Valkenburg since the death of her husband. *See Mindenhall v. Brown*, 7 Vet.App. 271

4

(1994) (applying the presumption of regularity to RO processes); *Ashley v. Derwinski (Ashley II)*, 2 Vet.App. 307, 309 (1992) (presumption of regularity in the administrative process may not attach if the facts before the Court indicate an irregular process); *see also United States v. Roses Inc.*, 706 F.2d 1563, 1567 (Fed. Cir. 1983) (presumption of regularity "does not help to sustain an action that on its face appears irregular").

In sum, the Board's failure to fully discuss the evidence in the file that is relevant and material to the issue of whether Mrs. Valkenburg had filed a claim for DIC earlier than March 1995, and in particular shortly after her husband's death, frustrates judicial appellate review. *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *see also Washington v. Nicholson*, 19 Vet.App. 362, 367-68 (2005) (Board must "assess the credibility of, and weight to be given to," lay testimony); *Gutierrez v. Principi*, 19 Vet.App. 1, 9 (2004) (Board's reasoning flawed when it fails to discuss adequately evidence in support of claim); *Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (Board must provide an adequate statement of reasons or bases "for its rejection of any material evidence favorable to the claimant"). Generally, such error warrants remand. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (remand is appropriate "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate"). In this instance, however, our conclusion below–that reversal is warranted with regard to the Board's finding that the preponderance of the evidence supported a finding that an application for survivor's benefits had not been filed with SSA–moots the need to remand with regard to the issue of whether a claim for DIC had been filed directly with the Secretary.

B. Application Form Requesting Survivor's Benefits, Filed with the SSA Commissioner

*1. Facts*

The record reflects numerous requests by the Secretary to determine whether Mrs. Van Valkenburg filed an application for survivor's benefits with the SSA commissioner, e.g., letters dated November 19, 1998; May 11, 1999; May 27, 1999; May 25, 2001; a fax dated August 16, 1999; and no less than four reports of contact between VA and SSA. The SSA initially responded to the Secretary on May 18, 1999, that a "survivor" application was filed in December 1974 and that Mrs. Van Valkenburg became entitled to such benefits in September 1988. R. at 1299. In July 1999, SSA again verified entitlement to benefits as of September 1988. R. at

1304. However, an August 17, 1999, letter from SSA to Mrs. Van Valkenburg states that she became entitled to "spouse's benefits" in April 1980 and became entitled to "widow's benefits" in December 1984. R. at 1317. An August 18, 1999, report of contact reflects that a VA representative reported that a supervisor at SSA stated that prior to the veteran's death, (1) Mrs. Van Valkenburg was receiving spouse's benefits, (2) there was no application or paperwork to be completed when the veteran died because the benefits are "changed over" to widow's benefits, (3) SSA has "eliminated almost all actual paperwork and information is input by computers for the most part," and (4) even if there was a file, if there is "no actual new paperwork it is destroyed after 5 years." R. at 1321.

Less than a week later, on August 24, 1999, SSA reported that Mrs. Van Valkenburg "filed" and was entitled to widow's benefits in September 1988. R. at 1329. A report of contact completed that same day reflects that a VA representative reported that an SSA employee stated that if a widow is already drawing Social Security benefits, "all they have to do is call Social Security," and that SSA does not require proof of death "since they simply pay the greater benefit and not both." R. at 1333. Also on August 24, 1999, a service representative at SSA certified that Mrs. Van Valkenburg became entitled to spouse's benefits in April 1980 and that she automatically began receiving widow's benefits when her husband died in December 1984. R. at 1337.

A May 30, 2001, report of contact reflects that a VA representative reported that an SSA employee stated that Mrs. Van Valkenburg was receiving SSA benefits continually from before the veteran's death, and that after his death those benefits were transferred to widow's benefits. R. at 1410. The SSA employee also reportedly stated that Mrs. Van Valkenburg "applied" for SSA disability twice, with probable application dates of January 1992 and July 1993, based on when those claims were decided. *Id*. Yet, a September 2001 letter from SSA to Mrs. Van Valkenburg states that she had been receiving SSA benefits since April 1984 (R. at 1423), and a March 2002 letter from SSA to the Secretary states that, prior to her husband's death, Mrs. Van Valkenburg was receiving benefits as a mother with child in care, and this was automatically converted in December 1984 to survivor's benefits, and again converted in September 1998 to widow's benefits, all without any applications being filed.

Throughout the processing of her claim for an earlier effective date, Mrs. Van Valkenburg has indicated that she (1) thinks she filed a claim for SSA widow's benefits after her husband's death (R. at 1287), (2) filed for SSA benefits before her husband's death (R. at 1361), and (3) began receiving additional funds from SSA automatically following his death (R. at 1632, 1640).

In the decision on appeal, the Board found that the weight of the evidence supported a finding that Mrs. Van Valkenburg did not file any application for SSA survivor's benefits after the death of her husband. Specifically, the Board assigned more weight to the SSA reports that indicated Mrs. Van Valkenburg's survivor's benefits began automatically, without an application, than it did to the SSA reports indicating that she had filed for these benefits. In its statement of reasons or bases, the Board erroneously stated that a May 2001 report of contact reflected that "the veteran" applied for SSA benefits in 1992 and 1993 (long after the death of Mr. Van Valkenburg), when in fact that report of contact states that it was Mrs. Van Valkenburg who applied; and the Board also failed to note that Mrs. Van Valkenburg was receiving SSA survivor's or widow's benefits, or both, long before 1992. R. at 9. Moreover, although the Board noted the August 1999 SSA document that indicated Mrs. Van Valkenburg had filed for widow's benefits, it failed to note the May 1999 SSA letter that indicated she had filed for survivor's benefits. R. at 11, 13, 1299. Mrs. Van Valkenburg argues that the Board's finding is clearly erroneous and, alternatively, that the Board's statement of reasons or bases with regard to this finding is inadequate. The Secretary disputes both arguments.

*2. Analysis*

a. Jointly Prescribed Form

In 1956, Congress enacted the Servicemen's and Veterans' Survivor Benefits Act (SVSBA), with the intent to, inter alia, eliminate the "administrative maze" that applicants for Federal surviving-spouse benefits had to work through to receive full benefits, and facilitate a streamlined process by which widows and widowers could file an application for benefits at either SSA or VA that would automatically constitute an application for benefits at the other Agency. *See* Pub. L. No. 84-881, 70 Stat. 857, 862 (Aug. 1, 1956). In furtherance of this objective, the law has mandated since 1956 that the Secretary and the commissioner of SSA "jointly prescribe forms" that when filed with either Agency, "shall be deemed to be an

application for benefits" at both agencies on the date the application is filed. 38 U.S.C. § 5105(b); 38 C.F.R. § 3.201.

Unfortunately, the implementing regulations and policies of the Secretary and commissioner regarding the jointly prescribed forms required by law are hardly a model of clarity. The Secretary cites no VA regulations prescribing a joint form between VA and SSA. Rather, he provided excerpts of the 1980 *VA Adjudication Procedures Manual* (M21-1), which state, inter alia, that when a claim for survivor's benefits has been filed with SSA, and it is the initial claim for VA benefits, it will be considered an incomplete claim, and the claimant will be furnished a VA Form 21-534 (Application for Dependency and Indemnity Compensation, Death Pension, and Accrued Benefits by a Surviving Spouse or Child). However, the Secretary indicated at oral argument that there has never been an individual "jointly prescribed form" promulgated between VA and SSA, and the Secretary further acknowledged in his supplemental memorandum to the Court that, in practice, a claim for survivor's benefits can be filed on *any form*, with either VA or SSA, when the applicant reflects an intent to seek such benefits. Secretary Supplemental Memorandum (Sec'y Supp. Memo.) at 8 ("[Secretary] requires only that there be a claim filed, whether it is initiated by SSA or by the survivor, with sufficient information to initiate the processing of a claim.").

Similarly, the Secretary cites no SSA regulations governing what might constitute the "jointly prescribed forms" required by law. Moreover, although the Secretary provided excerpts from SSA's *Programs Operations Manual System* (POMS) that indicate that the jointly prescribed forms consist of VA's Form 21-534, and SSA's Form 24 (Application for Survivor's Benefits), the Secretary advised the Court that SSA has migrated almost completely away from the use of paper forms and now asks applicants to apply for benefits telephonically or in person. Parties' Joint Response at 3; Sec'y Supp. Memo. at 6.

The net result is a wholly unclear picture of what constitutes a "jointly prescribed form." Moreover, given that SSA has largely migrated to awarding benefits without the use of *any* form, even while the Secretary continues to adhere to the need for a form,[3] the clear picture of

---

[3] At oral argument, counsel for the Secretary was asked to advise the Secretary of the increasingly divergent application methods of SSA and VA, and, taking into account the prevalence and practicality of electronic communication, of the apparent need to establish clear, updated regulations regarding what constitutes a "jointly

whatever might have constituted such a form in the past is now largely ineffective in fulfilling the intent of Congress in passing the SVSBA. It is in this context that we accept the Secretary's representation that any claim, sufficient to reflect an intent to apply for survivor's benefits, that is filed with SSA will suffice to establish the effective date for DIC.

### b. Board Decision as to the Preponderance of the Evidence

The Board's decision noted the numerous requests by the Secretary to determine whether Mrs. Van Valkenburg filed an application for SSA survivor's benefits with the commissioner. However, for the reasons stated below, and contrary to the Board's finding that the weight of the evidence supported the conclusion that no application was ever filed, the Court is left with a firm conviction to the contrary.[4] Rather, at a minimum, the evidence that such an application was presented within one year of the death of Mr. Van Valkenburg is in equipoise.

In this instance, we are not presented with an underdeveloped case. Neither party nor the record suggests this to be so. After more than 10 years of development, including two Court remands for further development, one Board remand, and numerous requests for information from SSA, the record is about as complete as it will be, and the Board's finding that the duty to assist has been fulfilled is plausible and not clearly erroneous. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) ("'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948))).

We also note that the parties do not dispute the fact that Mrs. Van Valkenburg is in receipt of SSA survivor's benefits, and has been since the death of her husband. Likewise, the

---

prescribed form" under 38 U.S.C. § 5105. We fully anticipate the Secretary will do so. *See Brown*, 513 U.S. at 118 ("interpretive doubt is to be resolved in the veteran's favor"); *Gardner v. Derwinski*, 1 Vet.App. 584, 587 (1991) ("[P]lain meaning must be given effect unless a 'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters.'" (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564 (1982))); *see also* 38 U.S.C. § 7261(a)(2) (Court may compel action unreasonably delayed).

[4] It is not clear whether the Board understood the Secretary's practice of recognizing the date of any application form requesting survivor's benefits filed with SSA, as the effective date for an application for DIC. *Compare* R. at 11 (addressing whether Mrs. Van Valkenburg filed a claim with SSA for widow's benefits) *with* R. at 13 (addressing whether the Mrs. Van Valkenburg filed a claim with SSA for widow's benefits that could qualify as a claim for DIC benefits).

9

parties do not dispute the fact that any application form requesting these SSA benefits made at or near the time of the death of Mr. Van Valkenburg likely would have been destroyed prior to Mrs. Van Valkenburg's 1995 application for DIC, because, as the Secretary acknowledged at oral argument, SSA in its normal course of business destroys its records after five years. Here, it is indisputable that survivor's benefits were initiated and awarded either by an application from Mrs. Van Valkenburg or sua sponte by SSA through automatic conversion.

Although the Board found that Mrs. Van Valkenburg expressed uncertainty over whether or not she filed a claim for SSA survivor's benefits or whether her benefits were converted upon her husband's death, that is only one factor to consider in determining whether it was at least as likely as not that an application was filed. For one, the record reflects that Mrs. Van Valkenburg filed numerous requests for assistance and benefits upon the death of her husband, including a request that the Secretary release all of her husband's medical records for the very purpose of seeking "social services" or "social" benefits, indicating the intent to seek such benefits. R. at 1510. Although at oral argument the Secretary argued the mailing of a VA Form 21-534 to Mrs. Van Valkenburg in December 1984 was triggered by her application for a U.S. flag for burial purposes, the reason the application was sent is not clear from the record–for instance, it appears just as likely that it was sent because the Secretary received notice that Mrs. Van Valkenburg had filed a claim requesting SSA survivor's benefits, as the M21-1 would have required.

Further, in weighing the evidence, the Board relied heavily on the SSA reports indicating that an application for survivor's benefits was never filed, but the totality of the SSA reports on this ultimate issue are very conflicting, with several reports stating that Mrs. Van Valkenburg had either filed an application for survivor's or widow's benefits or that she automatically became entitled to receive such benefits in various years. None of the numerous reports contain a certification by SSA that an application was not filed. None of the reports indicating survivor's benefits were initiated sua sponte by SSA provide cites to relevant SSA policy or regulation in effect in the mid-1980s (or even to current policy or regulations to that effect). Rather, all of the reports appear to reflect a current (and conflicting) understanding by the reporting individuals of SSA's practice as they understand it, or a conflicting understanding of what is indicated in the limited records SSA does have. In sum, the SSA reports are equally supportive of a finding that Mrs. Van Valkenburg began receiving survivor's benefits after she submitted a form application

10

requesting such benefits, as it is of a finding that the benefits were initiated sua sponte by SSA through automatic conversion upon receipt of notification that her husband had died.

Based on the totality of the record, and the Secretary's representation that any type of form filed with SSA by Mrs. Van Valkenburg requesting survivor's benefits would suffice to warrant an earlier effective date, we are left with the definite and firm conviction that the Board's finding that the evidence weighed against a finding that Mrs. Van Valkenburg filed such a form within one year of her husband's death is clearly erroneous, as is the Board's finding that she was not entitled to an effective date of December 1, 1984, the first day of the month that her husband died, for the award of DIC benefits.[5] *See Padgett v. Nicholson*, 19 Vet.App. 133, 147 (2005) (en banc) ("[I]f the Court has the '"definite and firm conviction that a mistake has been committed"' by the Board in finding that the weight of the evidence preponderated against the claim on a finding of material fact, then section 7261(a)(4) and section 7261(b)(1) require that such a finding be held clearly erroneous and be reversed or set aside." (quoting *Gilbert*, 1 Vet.App. at 5)), *withdrawn on other grounds*, 19 Vet.App. 334 (2005), *rev'd and remanded*, 473 F.3d 1364 (Fed. Cir. 2007); *see also Mariano v. Principi*, 17 Vet.App. 305, 313 (2003) ("[T]he outcome of the Board's application of the section 5107(b) equipoise standard is a factual determination that this Court reviews under the 'clearly erroneous' standard.").

These Board findings will be reversed, and the matter remanded for the assignment of an effective date for the award of DIC of December 1, 1984, the first day of the month in which Mr. Van Valkenburg died, s*ee* 38 U.S.C. § 5110(d)(1) (authorizing an effective date for DIC as of the first day of the month of death if an application is filed within one year of death), and for further adjudication as appropriate and consistent with this opinion. These matters are to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112; *see also Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (appellant may present additional evidence and argument in support of matters remanded, and the Board must consider any evidence and argument so presented).

---

[5] In light of our decision that the Board clearly erred in its finding that the preponderance of the evidence was against an application for survivor's benefits having been filed after Mr. Van Valkenburg's death, we need not decide whether notification of death to SSA that resulted in an award of survivor's benefits also constituted an "application" for survivor's benefits for DIC effective-date purposes.

## III.  CONCLUSION

For the foregoing reasons, the September 6, 2007, decision of the Board denying an earlier effective date is REVERSED and the matters REMANDED for the assignment of an effective date for DIC as of December 1, 1984, and further adjudication as appropriate and consistent with this opinion.