Citation Nr: 1706063 
Decision Date: 02/02/17 Archive Date: 03/03/17

DOCKET NO. 09-02 615 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs (VA) Regional Office (RO) 
in Winston-Salem, North Carolina


THE ISSUES

1. Entitlement to service connection for a low back disorder.

2. Entitlement to service connection for a skin disorder. 

3. Entitlement to service connection for an acquired psychiatric disorder, to include posttraumatic stress disorder (PTSD), depression, and a schizoid disorder.

4. Entitlement to an initial compensable evaluation for a cyst of the right breast, status post excision, to include consideration of a recurrent cystic condition.


REPRESENTATION

Appellant represented by: Robert V. Chisholm, Attorney


ATTORNEY FOR THE BOARD

L. Cramp, Counsel

INTRODUCTION

The appellant is a veteran (the Veteran) who had active duty service from August 1988 to August 1991. He was additionally a member of the Army National Guard from August 1991 to April 1992.

As it pertains to the psychiatric disorder issue, this appeal comes before the Board of Veterans' Appeals (Board) in part from a March 2015 Order of the United States Court of Appeals for Veterans' Claims (Veterans Court). That appeal originated from a November 2007 rating decision of the RO in Winston-Salem, North Carolina. The remaining issues come before the Board from a December 2013 decision of the Winston-Salem RO. 

In a decision dated in January 2014, the Board denied a claim of entitlement to service connection for an undiagnosed disorder manifested by memory loss. The Board also referred back to the RO the issue of entitlement to service connection for an acquired psychiatric disorder, to include PTSD. The Veteran appealed that decision to the Veterans Court. In an Order dated in March 2015, pursuant to a Joint Motion for Remand, the Veterans Court vacated the Board's decision, and remanded a combined psychiatric issue back to the Board for additional development consistent with the Joint Motion.

In October 2015, the Board remanded the psychiatric claim to the RO for additional evidentiary development. The appeal has since been returned to the Board for further appellate action. The Board also remanded separately appealed claims of entitlement to service connection for a low back disorder and entitlement to an increased disability rating for service-connected right breast cyst, each for issuance of a Statement of the Case. In November 2015, the RO issued the Statement of the Case requested in the Board's remand. In correspondence received in December 2015, the Veteran stated that he wished to perfect the appeal as to the issues listed in the November 2015 Statement of the Case. 

The Board has considered whether the rating issue on appeal encompasses a claim of entitlement to a total disability rating based on individual unemployability due to service connected disabilities (TDIU) in accordance with Rice v. Shinseki, 22 Vet. App. 447 (2009) (where there is evidence of unemployability raised by the record during a rating appeal period, the TDIU is an element of an initial rating or increased rating). However, there is no assertion that the service connected noncompensable right chest scar has resulted in unable to secure or follow a substantially gainful occupation. 

The Veteran submitted additional evidence after the most recent Supplemental Statement of the Case and provided a waiver of his right to have the claim remanded to the RO for initial consideration of this evidence.


FINDINGS OF FACT

1. Arthritis of the thoracolumbar spine did not become manifest to a degree of 10 percent or more within one year of service separation; the Veteran's thoracolumbar spine symptoms have been attributed to a known diagnosis; a thoracolumbar spine disorder is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. 

2. The Veteran's skin symptoms have been attributed to a known diagnosis; a skin disorder is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. 

3. The Veteran does not have PTSD; a psychosis did not become manifest to a degree of 10 percent or more within one year of service separation; the Veteran's psychiatric symptoms have been attributed to a known diagnosis; an acquired psychiatric disorder other than PTSD is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. 

4. For the entire period on appeal, the Veteran's right breast cyst residuals have been manifested by a well-healed surgical incision on the right chest, with no functional impairment or sequelae. 


CONCLUSIONS OF LAW

1. A thoracolumbar spine disorder was not incurred in service and is not proximately due to, a result of, or aggravated by, a service-connected disability; arthritis and/or undiagnosed disorder manifested by joint pain is/are not presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1117, 1131, 1154(b), 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.317 (2016).

2. A skin disorder was not incurred in service and is not proximately due to, a result of, or aggravated by, a service-connected disability; an undiagnosed skin disorder is not presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1117, 1131, 1154(b), 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.317 (2016).

3. An acquired psychiatric disorder was not incurred in service and is not proximately due to, a result of, or aggravated by, a service-connected disability; a psychosis and/or undiagnosed neuropsychological disorder is/are not presumed to have been incurred in service. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1117, 1131, 1154(b), 1137, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.317, 4.125 (2016).

4. The criteria for a disability rating higher than 0 percent for right breast cyst residuals have not been met for any period. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.159, 4.1, 4.2, 4.3, 4.6, 4.7, 4.10, 4.118, Diagnostic Code 7805 (2016).



REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Service Connection Claims

VA law provides that, for disability resulting from personal injury suffered or disease contracted in line of duty, or for aggravation of a preexisting injury suffered or disease contracted in line of duty, in the active military, naval, or air service, during a period of war, or other than a period of war, the United States will pay to any veteran thus disabled and who was discharged or released under conditions other than dishonorable from the period of service in which said injury or disease was incurred, or preexisting injury or disease was aggravated, compensation, except if the disability is a result of the veteran's own willful misconduct or abuse of alcohol or drugs. 38 U.S.C.A. §§ 1110, 1131 (West 2014). 

Entitlement to service connection on a direct basis requires (1) evidence of current nonservice-connected disability; (2) evidence of in-service incurrence or aggravation of disease or injury; and (3) evidence of a nexus between the in-service disease or injury and the current nonservice-connected disability. 38 C.F.R. § 3.303(a); Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004). 

Service connection for posttraumatic stress disorder requires (1) medical evidence diagnosing the condition in accordance with 38 C.F.R. § 4.125(a); (2) a link, established by medical evidence, between current symptoms and an in-service stressor; and (3) credible supporting evidence that the claimed in-service stressor occurred. 38 C.F.R. § 3.304(f). 

Service connection on a secondary basis requires (1) evidence of a current nonservice-connected disability; (2) evidence of a service-connected disability; and (3) evidence establishing that the service-connected disability caused or aggravated the current nonservice-connected disability. 38 C.F.R. § 3.310(a),(b); Wallin v. West, 11 Vet. App. 509, 512 (1998). 

For specific enumerated diseases designated as "chronic" there is a presumption that such chronic disease was incurred in or aggravated by service even though there is no evidence of such chronic disease during the period of service. This presumption applies to veterans who served 90 days or more during a period of war or after December 31, 1946. In order for the presumption to attach, the disease must have become manifest to a degree of 10 percent or more within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307(a)(3), 3.309(a).

Where one of the enumerated chronic diseases is shown to be chronic in service (or within the presumptive period under § 3.307) so as to permit a finding of service connection, subsequent manifestations of the same chronic disease at any later date, however remote, are service connected, unless clearly attributable to intercurrent causes. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time, as distinguished from merely isolated findings or a diagnosis including the word "Chronic." When the disease identity is established (leprosy, tuberculosis, multiple sclerosis, etc.), there is no requirement of evidentiary showing of continuity. 38 C.F.R. § 3.303(b).

Presumptive service connection for the specified chronic diseases may alternatively be established by way of continuity of symptomatology under 38 C.F.R. § 3.303(b). Continuity of symptomatology may be shown by demonstrating "(1) that one of the enumerated diseases was noted during service or within the presumptive period; (2) evidence of post-service continuity of the same symptomatology; and (3) medical or, in certain circumstances, lay evidence of a nexus between the present disability and the post-service symptomatology." Barr v. Nicholson, 21 Vet. App. 303, 307 (2007); see also Davidson v. Shinseki, 581 F.3d 1316; Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007) (holding that "[w]hether lay evidence is competent and sufficient in a particular case is a factual issue to be addressed by the Board"). However, the United States Court of Appeals for the Federal Circuit (Federal Circuit) has held that the theory of continuity of symptomatology can be used only in cases involving those conditions explicitly recognized as chronic in 38 C.F.R. § 3.309(a). Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013).

Arthritis and psychoses are included among the enumerated chronic diseases. Arthritis is primarily rated on the basis of limitation of motion. Therefore, the rating provisions addressing limitation of motion of specific joints must be considered in determining whether arthritis is manifest to a degree of 10 percent or more. See 38 C.F.R. § 4.71a, Diagnostic Code 5003 (2016).

In order for lumbar spine arthritis to have become manifest to a degree of 10 percent, there must be evidence to substantiate that (1) forward flexion of the thoracolumbar spine is limited to 85 degrees, or (2) that combined range of motion of the thoracolumbar spine is limited to 235 degrees, or (3) there must be a diagnosis "established by X-ray findings" and "satisfactory evidence of painful motion." See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5242 (2016).

In order for a psychosis to have become manifest to a degree of 10 percent, there must be a diagnosis that conforms to 38 C.F.R. § 3.384 (2016) and evidence to substantiate that the disease produces occupational and social impairment due to mild or transient symptoms which decrease work efficiency and ability to perform occupational tasks only during periods of significant stress; or, that symptoms are controlled by continuous medication. See 38 C.F.R. § 4.130, General Rating Formula for Mental Disorders. 

The term "psychosis" is defined as any of the following disorders listed in Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition of the American Psychiatric Association (DSM-5): (a) Brief Psychotic Disorder; (b) Delusional Disorder; (c) Psychotic Disorder Due to Another Medical Condition; (d) Other Specified Schizophrenia Spectrum and Other Psychotic Disorder; (e) Schizoaffective Disorder; (f) Schizophrenia; (g) Schizophreniform Disorder; and (h) Substance/Medication-Induced Psychotic Disorder. See 38 C.F.R. § 3.384 (2016). 

The Veteran in this case served in the Persian Gulf during the Gulf War. Under 38 U.S.C. § 1117(a)(1), compensation is warranted for a Persian Gulf veteran who exhibits objective indications of a "qualifying chronic disability" that became manifest during service on active duty in the Armed Forces in the Southwest Asia theater of operations during the Persian Gulf War, or to a degree of 10 percent during the presumptive period prescribed by the Secretary. To constitute a "qualifying" chronic disability, the chronic disability must not be attributed to any known clinical disease by history, physical examination, or laboratory tests. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317(a)(1). 

The service treatment records reveal no treatment for, complaint of, or diagnosis of, an acquired psychiatric disorder or a thoracolumbar spine disorder. An August 15, 1991, Surgery Clinic Note reveals a surgical excision of a subcutaneous cyst of the right breast. 

The Veteran was examined at service separation in July 1991 and his spine and skin were found to be clinically normal. He was assessed psychiatrically at that time and the results were also clinically normal. He completed a report of medical history at service separation and he stated that he had no history of, or current depression or excessive worry. He also stated that he had no history of, or current, recurrent back pain or painful joints. While he reported a history of a cyst, but reported no history of, or current, skin diseases. 

The Veteran was assigned final physical profile ratings of U-1, L-1, and S-1. Under the physical profile (PULHES), the U stands for upper extremities. This factor includes the upper spine (cervical, thoracic, and upper lumbar) in regard to strength, range of motion, and general efficiency. The L stands for lower extremities. This factor includes the lower back musculature and lower spine (lower lumbar and sacral) in regard to strength, range of motion, and general efficiency. The S stands for psychiatric. This factor concerns personality, emotional stability, and psychiatric diseases. With respect to each rating, the number 1 indicates that an individual possesses a high level of medical fitness and, consequently, is medically fit for any military assignment. See 9-3(c)(1) Army Regulation 40-501, Change 35; Hanson v. Derwinski, 1 Vet. App. 512 (1991); Odiorne v. Principi, 3 Vet. App. 456, 457 (1992).

In sum, the Veteran was provided a thorough examination at service separation and his physical, upper and lower spine, skin, and psychiatric functioning was normal. He also specifically denied experiencing symptomatology associated with the claimed disorders, and denied any history of such symptomatology. This constitutes highly probative evidence that he sustained no injury or disease in service with respect to the thoracolumbar spine or psyche, and that he experienced no injury disease of the skin with the exception of the already service-connected cyst surgery residuals. 

After service, psychiatric issues are first referenced in 2001, more than a decade post-discharge, at which time the Veteran was seen by a VA Primary Care physician for complaints of knee and arm pain. Notably, the comprehensive examination administered at that time revealed no depression, anxiety, hallucinations, or history of psychiatric care (VBMS record 01/20/2005, P. 63).

An April 26, 2002, Primary Care Note includes the first positive reference to depression, and indicates that the Veteran was prescribed anti-depressant medication. However, a concurrent depression screen was negative. The Veteran reported that, in the past year, he had not experienced two consecutive weeks during which he felt sad, blue, or depressed, or lost all interest or pleasure in things usually cared about or enjoyed, and that he had not had two years or more in life feeling depressed or sad most days. Depression screens in May 2003, May 2004, April 2005, and August 2006, continued to be negative, and PTSD screens in May 2004, April 2005, August 2006, and November 2011, were also negative (VBMS record 01/20/2005, Pgs. 37, 50, 59). 

VA Dermatology Clinic Notes reveal treatment for acne keloidalis beginning in November 2002 (VBMS record 01/20/2005, P. 51). 

The Veteran first filed a claim for service connection in August 2004, claiming that his depression began in 1992, and that he had received treatment starting in 2004. Thus, even by the Veteran's own account, the onset of depression is after service. Moreover, he specifically denied a history of depression treatment as late as 2001. 

In the August 2004 claim, the Veteran also mentioned joint pains, but did not specify a back problem. Skin problems were also not mentioned. 

Records from Carolina Spine and Hand Center in March 2007 show that the Veteran was seeking treatment for various joint pains; however, he did not describe back pain at that time, but focused on hand/wrist, and knee pains (VBMS record 04/30/2007). 

A March 2007 letter from the Veteran's current wife states that she has known him since September 1993 and has noticed problems with anxiety along with bowel problems over the years. 

An October 2007 VA Mental Disorders Examination reveals an Axis I diagnosis of adjustment disorder with mixed emotions secondary to medical problems, and a rule-out diagnosis of cognitive disorder NOS. 

A February 2008 VA Psychiatry Initial Intake Note reveals complaints regarding disturbed sleep for the past year as well as "getting down" and having "mood swings" that seem to be related to medical problems (pain mostly). He denied symptomatology diagnostic of bipolar disorder, PTSD, or overt anxiety disorder. The assessment was mood disorder secondary to general medical condition (Virtual VA 03/16/2015, P. 154). 

An October 2009 Dermatology Consult reveals diagnoses of acne vulgaris and acne keloidalis nuchae. PTSD screens were negative in November 2011. X-rays dated in January 2012 reveal an L3 pars defect with minimal grade 1 anterolisthesis of L3 on L4 (Virtual VA 02/28/2012, Pgs. 98, 130).

A May 2012 VA Mental Disorders Examination reveals the Veteran's report that he witnessed a young soldier lose a leg in a land mine explosion. He also witnessed some Iraqi casualties. These events caused him to feel upset and made him think about losing his life, but he denied feelings of terror or horror. He had nightmares once every 2-to-3 months and startle reactions once a month, and his heart raced a little at times. He denied intrusive thoughts or flashbacks. He had angry outbursts 2 to 3 times a week and was moody and irritable. He had gotten into trouble at work recently for an outburst. He avoided crowded places or movies conversations and news about the war. He isolated himself and participated in few activities. He had various psychiatric diagnoses over the years the most recent of Dysthymic Disorder. The examiner concluded that, while he had some symptoms of PTSD, he did not appear to fit the full criteria for PTSD. The Axis I diagnosis was dysthymic disorder.

A December 2012 VA PTSD evaluation reveals the Veteran's report of service stressors such as an incident when a land mine exploded and the truck ahead of him became impacted, and an encounter with enemy soldiers while surrendering in the desert. However, he did not report a specific time of threatened death or fear of death with regard to these incidents. The examiner found the Veteran's reports of anger, depressed moods, and interrupted sleep, are consistent with previous recorded complaints of depressed moods and interrupted sleep. The Veteran reported over 20 years of employment that he described as very stressful and demanding, and that he supervises over 20 people in the unloading operation of over 50-70 trucks daily. He reported an increase in health issues and stated he was not sure how much more he would be able to work under current conditions. An assessment of depressive disorder NOS was provided. No PTSD diagnosis was provided (Virtual VA 03/16/2015, P. 56). 

A July 2013 Persian Gulf Registry Examination notes that the Veteran was first diagnosed with acne vulgaris of the face and neck in 2009 and also has acne of the upper back. The examiner opined that the acne vulgaris with acne keloidalis is less likely as not caused by military service. The rationale was that there was no documented complaint of acne by the Veteran on the 1991 exit examination. 

The July 2013 examination also provides a diagnosis of degenerative disc and joint disease of the lumbar spine and finds that this condition is less likely as not caused by service. The rationale is that there is no documented complaint of back pain on the exit examination or in the service treatment records, and that the imaging findings are not indicative of remote onset. 

A February 2014 VA PTSD opinion came to a similar conclusion as that provided in December 2012, finding that the Veteran was not appropriate for PTSD Clinical Team treatment as his symptom profile does not suggest a war trauma-related condition, but rather a depressive state likely associated with job stress (Virtual VA 03/16/2015, P. 35). 

A February 2015 Stressor Statement reveals the Veteran's account that he witnessed and experienced lots of things that stay on his mind on a daily basis to the present day. He recalled one of the guys from the unit stepped on a land mine while they were out on a mission, which caused him to lose his legs. Another incident involved his pulling his weapon on one of the guys in his unit because things were getting so frustrating. Towards the end of the war he could hear the bombing all through the night and had sleep loss. Another incident happened as they were moving towards the end of the war. They came upon enemy troops while riding in a convoy. Everyone had to exit the vehicles and get into position because they were not sure if they were going to take fire. His team Chief was so scared that he did not exit the vehicle. Due to this incident, the Veteran has not been able to trust many people. 

The Veteran's wife submitted a statement in March 2015 stating that she had known the Veteran since 1993 and they had been married since 2012. When she met the Veteran, he was very energetic and enjoyed sports. After the birth of his sons, he would teach the boys how to play sports and be very involved in their lives. As time passed, she began to notice how the Veteran's energy level diminished and he became socially invisible. According to her account, the Veteran stays to himself and only trusts one of his brothers. In his occupation post-service, he was promoted to supervisor, but needed mechanical devices to help with his memory. He eventually began to become very disgruntled with various people and would lash out verbally at them. He finally decided to resign because he felt like he would eventually hurt someone. He took another position in a non-supervisory role but continues to have verbal altercations and is like a "ticking time bomb waiting to explode." His health has deteriorated tremendously over the past 20+ years to the point that it's debilitating.

A May 2015 WRIISC Consult noted the Veteran's back complaints were due to arthritis and other known conditions; his skin complaints were due to acne and eczema, and that he had no complaints attributable to PTSD, but had a mood disorder (Virtual VA 01/07/2016). 

An April 2016 letter from J., Nicolino asserts that the original opinion and report are true under DSM-IV and DSM-5 (VBMS record 04/04/2016). 

With respect to the provisions for presumptive service connection for certain chronic diseases, the Board notes none of the skin diseases diagnosed in this case are listed among the chronic diseases for which there is a presumption of service connection. While arthritis and psychoses are listed among those chronic diseases, there is no confirmed manifestation of arthritis of the spine or a psychosis, to the degree of 10 percent or more, within one year of service separation. As neither disease was noted in service, the continuity of symptomatology previsions do not apply. 38 C.F.R. §§ 3.384, 4.71a (Diagnostic Codes 5003, 5242), 4.130 (General Rating Formula for Mental Disorders).

Regarding the Persian Gulf War provisions, the Veteran's psychiatric complaints have been medically attributed to a known diagnosis (adjustment/dysthymic disorder), as has his thoracolumbar spine disorder (arthritis) and skin disorder (acne). Accordingly, the Gulf War provisions are not for application. 38 U.S.C.A. § 1117; 38 C.F.R. § 3.317(a)(1).

There is no medical opinion of record that purports to relate a current back disorder or nonservice-connected skin disorder to service or to a service connected disability. The Veteran's assertions are the only evidence in favor the element of nexus regarding these claims. 

Generally, lay evidence is competent with regard to identification of a disease with unique and readily identifiable features which are capable of lay observation. See Barr, 21 Vet. App. at 308-09. A lay person may speak to etiology in some limited circumstances in which nexus is obvious merely through observation, such as sustaining a fall leading to a broken leg. See Davidson, 581 F.3d at 1316; Jandreau, 492 F.3d at 1376-77. Lay persons may also provide competent evidence regarding a contemporaneous medical diagnosis or a description of symptoms in service which supports a later diagnosis by a medical professional. However, a lay person is not competent to provide evidence as to more complex medical questions, i.e., those which are not capable of lay observation. Lay statements are not competent evidence regarding diagnosis or etiology in such cases. See Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (concerning rheumatic fever); Jandreau, at 1377, n. 4 ('sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer'); 38 C.F.R. § 3.159(a)(2).

The Board finds that relating a current diagnosis of a skin disease such as acne, or an orthopedic disease process such as degenerative disc or joint disease, to service, or service connected disability, is not the equivalent of relating a broken bone to a concurrent injury to the same body part (Jandreau, at 1377). Such an opinion requires knowledge of the potential causes of these diseases, and the inherently medical question of how potential injuries or exposures in service may have contributed to bring about remote onset of disease as manifested in this case. The Board emphasizes that the normal examination findings at service separation are persuasive evidence that he did not have any of these conditions at service separation, and therefore the onset of disease was temporally remote in each case. These are not matters which are capable of lay observation. Accordingly, the Veteran's lay statements are not competent evidence of an etiologic relationship between the claimed diseases and service, or service connected disability. 

After a review of all of the evidence, the Board finds that a preponderance of the evidence is against the crucial nexus element regarding the thoracolumbar spine and skin claims. The competent evidence is decidedly against this element with respect to both claims. A thoracolumbar spine disorder is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. A skin disorder is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. In light of these findings, the Board concludes that service connection for the claimed thoracolumbar spine disorder and skin disorder is not warranted. 

Turning to the Veteran's psychiatric disorder, the Board acknowledges a conflict in the medical evidence of record addressing the appropriate diagnosis and etiology of the Veteran's psychiatric disorder. 

The Veterans Court remanded this issue in March 2015. However, the Court found no failures in the Board's analysis regarding direct service connection of an acquired psychiatric disorder. In other words, the Court found no errors regarding direct service connection, secondary service connection, or presumptive service connection. The sole basis of the Court's remand was the decision of the Board to refer a claim of entitlement to PTSD to the RO rather than adjudicate it as a component of the psychiatric claim on appeal. 

A July 2014 opinion by J. Wheeler, Ph.D., was submitted subsequent to the remand. The opinion states that during Desert Storm, there was the constant fear that deadly gas would be used. SCUD missiles were a potential danger as well. The Veteran saw dead bodies and trucks blown up. He saw one soldier step on a land mine and lose a leg. These incidents and situations are consistent with the conditions necessary to produce a PTSD. Since Desert Storm, the Veteran has suffered from depression, anxiety, and intermittent panic attacks. His symptoms and behaviors are consistent with the diagnosis of PTSD. It is just as likely as not that the Veteran suffers from PTSD triggered by the traumas he experienced during Desert Shield/Desert Storm. 

A letter dated July 14, 2015, by J. Nicolino, Psy.D., states that the Veteran has depressive disorder due to another medical condition as well as PTSD. Dr. Nicolino stated that the Veteran meets the diagnostic criteria for PTSD diagnosis based on his described in-service stressors of encountering Iraqi troops, witnessing a soldier sustain a leg injury in an explosion, and witnessing airstrikes while in a war zone. 

The report of a VA examination dated November 2015 reveals a finding that the Veteran's symptoms do not meet the diagnostic criteria for PTSD under DSM-5 criteria. The only appropriate diagnosis was found to be adjustment disorder with depressed mood secondary to chronic pain. The examiner explained that neither the stressors nor the symptoms the Veteran reported support a diagnosis of PTSD based on either DSM-IV or DSM-5 criteria. While the stressors that he noted were frightening, they would be unlikely to support PTSD Criterion A, as further questioning clarified the level of his exposure to the reported events. Further, the Veteran did not engage in combat and even in combat veterans, the rates of developing PTSD have been estimated at between 12 and 15 percent. The dose-response relationship between combat exposure and PTSD is a consistent finding. For example, less than 5 percent of U.S. infantry personnel not exposed to enemy fire in Iraq developed PTSD, compared to almost 20 percent of those who engaged in more than five fire fights. According to the examiner, this does not mean that the Veteran is intentionally trying to deceive with his reported symptoms, but more likely is making an error of attribution as far as the cause of his symptoms. 

The examiner went on to explain that the psychological effects of chronic pain can be confused with symptoms of PTSD, as both can include disordered sleep, less mental focus, decreased energy, social withdrawal, irritability, depression, and anxiety. Additionally, the examiner noted that the Veteran has not been diagnosed with PTSD by his VA providers, nor has he been diagnosed with PTSD by multiple VA examiners. The examiner noted that Dr. Wheeler's diagnosis was based on a clinical interview without testing. Such a discrepancy between Dr. Wheeler's diagnosis and the VA examiner's diagnosis may be due to the fact that there are several important differences between a clinical evaluation conducted for treatment purposes and a forensic evaluation conducted for legal purposes such as a VA examination. For example, forensic evaluators, such as VA examiners, generally have access to more sources of information, e.g., service treatment records; have more time to review relevant private and/or VA treatment records; and are able to conduct objective testing; are able to use structured diagnostic interviews, which, as mentioned above and referenced below, are more accurate than unstructured interviews. The examiner also noted that recent research indicates a significant false positive rate of clinician diagnoses when compared to those obtained from evidence-based structured interview. Analyses revealed that more than one quarter of current PTSD diagnoses and more than one fifth of lifetime PTSD diagnoses in the Problem List were discrepant from those obtained by structured diagnostic interview. These results raise concerns about the validity of a significant number of PTSD diagnoses contained in VA medical records. 

The examiner concluded that the Veteran does not meet DSM-IV or DSM-5 criteria for a diagnosis of PTSD. The Veteran does, however, meet DSM-IV or DSM-5 criteria for a diagnosis of adjustment disorder with depressed mood that is at least as likely as not (50/50 probability) caused by or a result of chronic pain. The Veteran noted having pain in his joints and back that has a negative impact on his mood and that he has been bothered by chronic pain since he got out of military. 

After a review of all of the evidence, the Board finds that the Veteran does not have PTSD. Moreover, an acquired psychiatric disorder other than PTSD is not related to service and is not related to or permanently worsened beyond natural progress by a service-connected disability or disabilities. 

In so finding, the Board finds the November 2015 VA opinion to be the most persuasive, as it is based on direct examination and testing of the Veteran, and it is framed in a thorough discussion of medical principles and the Veteran's actual performance on diagnostic testing. The opinion of J. Wheeler that the incidents and situations of service are "consistent with" the conditions necessary to produce PTSD, and that his symptoms and behaviors are "consistent with" the diagnosis of PTSD, is absent any meaningful discussion of the specific criteria involved and the Veteran's performance on testing. The opinion of J. Nicolino is, in comparison to the November 2015 opinion, conclusory and supported only in terms of the assertions of the provider. Neither the VA examiner nor the Board has cast doubt on the events of service and whether they are consistent with PTSD stressors. Rather, the Board's finding is that the most persuasive medical evidence does not link those events to a PTSD diagnosis. 

The Board also finds that no currently diagnosed psychiatric disorder is related to service or to a service connected disability. The Veteran's primary argument with respect to secondary service connection is that his back disorder causes his depression. Service connection is not in effect for a thoracolumbar spine disorder and, as discussed above, service connection is not warranted for a thoracolumbar spine disorder. There is no medical opinion that purports to relate a current psychiatric disorder by causation or aggravation to the service connected irritable bowel syndrome or right breast cyst residuals. Accordingly, the Board concludes that service connection for an acquired psychiatric disorder is not warranted. 

In reaching these conclusions, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against each claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53-56 (1990).

Increased Rating Claim

Disability ratings are determined by evaluating the extent to which a veteran's service-connected disability adversely affects his or her ability to function under the ordinary conditions of daily life, including employment, by comparing his or her symptomatology with the criteria set forth in the Schedule for Rating Disabilities. See 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1. If two ratings are potentially applicable, the higher rating will be assigned if the disability more nearly approximates the criteria required for that rating; otherwise, the lower rating will be assigned. See 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability will be resolved in favor of the veteran. See 38 C.F.R. § 4.3.

A disability rating may require re-evaluation in accordance with changes in a veteran's condition. Thus, it is essential that the disability be considered in the context of the entire recorded history when determining the level of current impairment. See 38 C.F.R. § 4.1. See also Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Nevertheless, where a veteran is appealing the rating for an already established service-connected condition, his present level of disability is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). However, when an appeal is based on the assignment of an initial rating for a disability, following an initial award of service connection for this disability, the rule articulated in Francisco does not apply. Fenderson v. West, 12 Vet. App. 119 (1999). Instead, the evaluation must be based on the overall recorded history of a disability, giving equal weight to past and present medical reports. Id. Staged ratings are appropriate for an increased-rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007).

The current appeal arises from a claim of entitlement to service connection for cysts, received at the RO on March 17, 2012. In the December 2013 rating decision, the RO granted service connection for surgical residuals of a right breast cyst and assigned an initial rating of 0 percent under Diagnostic Code 7805, effective March 17, 2012. 

A VA examination of July 2013 reveals no sequelae from the in-service excision of a benign right breast mass. The examiner found no residuals, noted no scar, and found no impact on the Veteran's ability to work. 

Diagnostic Code 7805 essentially covers disabling effects of scars not addressed by other more specific diagnostic codes pertaining to the skin. As the RO determined that there were no disabling effects, a 0 percent rating was assigned under that code. 

The Board has considered whether any other diagnostic code would afford a compensable rating. Diagnostic Code 7800 requires involvement of the head, face, or neck. Here, there is no evidence or assertion of such symptoms. The scar is located on the right breast only. 

Diagnostic Code 7802 provides a 10 percent rating for superficial nonlinear scars that cover areas of 144 square inches (929 square centimeters) or greater. Here, there is no evidence or assertion of such symptoms. The Veteran's scar is a surgical scar and the descriptions are consistent with a linear scar. 

Diagnostic Code 7801 applies to scars that are deep and nonlinear. In order to warrant a rating in excess of 10 percent, the scar must cover at least 6 square inches (39 square centimeters). Here, there is no evidence or assertion of such symptoms. 

Diagnostic Code 7804 provides a rating of 10 percent for up to two tender or painful scars. Here, the evidence demonstrates no sequelae associated with the surgery. Thus, the evidence does not more nearly approximate a single painful or tender scar than it does a non-disabling condition. As such, the Board concludes that a rating in excess of 0 percent is not warranted for the service connected surgical scar, nor is any separate rating warranted. 

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, as the preponderance of the evidence is against the claim, that doctrine is not applicable. See 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102; Gilbert, 1 Vet. App. at 53-56.

Extraschedular Consideration

The Board has considered whether an extraschedular evaluation is warranted for the issues on appeal. In exceptional cases an extraschedular rating may be provided. 38 C.F.R. § 3.321 (2016). The threshold factor for extraschedular consideration is a finding that the evidence before VA presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Therefore, initially, there must be a comparison between the level of severity and symptomatology of the claimant's service-connected disability with the established criteria found in the rating schedule for that disability. Thun v. Peake, 22 Vet. App. 111 (2008).

Under the approach prescribed by VA, if the criteria reasonably describe the claimant's disability level and symptomatology, then the claimant's disability picture is contemplated by the rating schedule, the assigned schedular evaluation is, therefore, adequate, and no referral is required. In the second step of the inquiry, however, if the schedular evaluation does not contemplate the claimant's level of disability and symptomatology and is found inadequate, the RO or Board must determine whether the claimant's exceptional disability picture exhibits other related factors such as those provided by the regulation as "governing norms." 38 C.F.R. 3.321(b)(1) (related factors include "marked interference with employment" and "frequent periods of hospitalization"). When the rating schedule is inadequate to evaluate a claimant's disability picture and that picture has related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for completion of the third step-a determination of whether, to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id. 

The Board finds that the first Thun element is not satisfied here. The Veteran's service-connected disability is essentially asymptomatic. The signs and symptoms and their resulting impairment are thus fully contemplated by the rating schedule. The diagnostic codes in the rating schedule corresponding to disabilities of the skin provide disability ratings on the basis of a variety of symptoms, to include an asymptomatic condition. In short, there is nothing exceptional or unusual about the Veteran's disability because the rating criteria reasonably describe his disability level and symptomatology. Thun, 22 Vet. App. at 115.

In this regard and consistent with the reasoning presented above, the Board finds that the rating schedule is adequate, even in regard to the collective and combined effect of all of the Veteran's service connected disabilities, and that referral for extraschedular consideration is not warranted under the circumstances of this case. Johnson v. McDonald, 762 F.3d 1362, 1365-66 (Fed. Cir. Aug. 6, 2014). In so finding, the Board notes that the Veteran has not identified or asserted that the collective and combined effect of all of the Veteran's service connected disabilities have rendered the rating schedule for the skin inadequate. See Yancy v. McDonald, 27 Vet. App. 484, 495 (2016) (the Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities).

Special Monthly Compensation Consideration

The Board has considered whether the Veteran's disability picture warrants any level of Special Monthly Compensation (SMC). See 38 U.S.C.A. §§ 1114; 38 C.F.R. §§ 3.350, 3.352. 

The Veteran is currently not in receipt of any level of SMC. The evidence demonstrates that he does not have such impairment as approximates loss of use of either upper extremity. 38 U.S.C. § 1114(k), (m), (n), (o); 38 CFR § 3.350(a), (c), (d), (e). He has also not been found to be housebound or in need of the aid and attendance of another. 38 U.S.C. § 1114(l), (s), (r) 38 CFR § 3.350(b), (i), (h). The combined disability rating is 30 percent since August 12, 2014. 38 U.S.C. § 1114(p), (s) 38 CFR § 3.350(f), (i). Under the circumstances here, the Board concludes that no additional SMC is warranted. 

Duties to Notify and Assist

VA's duty to notify was satisfied by letters in August 2004, January 2005, February 2005, March 2007, May 2012, and February 2015. See 38 U.S.C.A. §§ 5102, 5103, 5103A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

The RO has obtained pertinent medical records including the service treatment records, VA outpatient treatment reports, and private treatment reports identified by the Veteran. The Veteran has not identified, and the record does not otherwise indicate, any additional existing evidence that is necessary for a fair adjudication of this claim that has not been obtained. 

The RO has also obtained a thorough medical examination regarding the claim, as well as multiple medical opinions. The Veteran has asserted the November 2015 VA examiner misreported several pertinent facts in the examination report. These relate to the finding that he does not have PTSD, that his psychiatric disorder is controlled by medication, the attribution and severity of employment difficulties, the effect of pain from physical disabilities on his employment difficulties, as well as numerous quotations of statements reported by the examiner which he now disputes. The Board understands that the Veteran disagrees with the finding of the November 2015 report that he does not have PTSD. However, there is no indication from a review of the record, to include that report, that the examiner's opinion was based to any substantial degree on a misunderstanding of fact pertinent to the diagnosis rendered. This opinion is consistent with several other opinions and is in fact the consensus opinion of his VA providers from whom he has received ongoing counseling and treatment for his psychiatric disorder. 

The Veteran's attorney has objected to the development undertaken by VA following the Veterans Court Remand on the basis that the Veteran had provided private opinion evidence and that further development was not necessary, citing Mariano v. Principi, 17 Vet. App. 305, 312 (2003) (VA may not order additional development for the sole purpose of obtaining evidence unfavorable to a claimant). However, the development undertaken to obtain another medical opinion was based on the clear conflict in the opinion evidence of record. It was necessary to have a medical professional review the entirety of the record to determine why there might be a conflict and whether the interpretation of the facts had changed. While VA may not order additional development without an adequate reason, clarification of conflicting opinion evidence is certainly an adequate reason. 

As noted above, this appeal involves a remand by the Board for additional evidentiary development. A remand by the Board confers on the claimant, as a matter of law, the right to compliance with the remand orders. Stegall v. West, 11 Vet. App. 268, 271 (1998). While substantial compliance is required, strict compliance is not. D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) citing Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

In this case, the RO substantially complied with the Board's October 2015 remand instructions by obtaining an additional medical opinion regarding the appropriate psychiatric diagnosis and the etiology of the claimed psychiatric disorder. 






CONTINUED ON NEXT PAGE-ORDER


ORDER

Service connection for a thoracolumbar spine disorder is denied. 

Service connection for a skin disorder is denied. 

Service connection for an acquired psychiatric disorder is denied. 

A disability rating in excess of 0 percent for right breast cyst residuals is denied. 



____________________________________________
JONATHAN B. KRAMER 
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs