Citation Nr: 1717646 
Decision Date: 05/22/17 Archive Date: 06/05/17

DOCKET NO. 11-30 188 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Lincoln, Nebraska


THE ISSUES

1. Entitlement to service connection for obstructive sleep apnea (OSA).

2. Entitlement to service connection for a right shoulder disability.

3. Entitlement to service connection for a cervical spine disability.

4. Entitlement to service connection for headaches.

5. Entitlement to service connection for a lumbar spine disability.

6. Entitlement to service connection for chest pain, including as due to a heart disability. 

7. Entitlement to service connection for a left shoulder disability.

8. Entitlement to service connection for right wrist carpal tunnel syndrome (CTS).

9. Entitlement to service connection for left wrist CTS.

10. Entitlement to service connection for a head injury.

13. Entitlement to an initial rating higher than 30 percent for bronchial asthma (also claimed as shortness of breath) to include COPD.

14. Entitlement to a temporary total rating for convalescent purposes under 38 C.F.R. § 4.30.

11. Entitlement to an increased rating for right wrist tendinitis on an extraschedular basis.

12. Entitlement to an increased rating for right elbow fracture on an extraschedular basis.



REPRESENTATION

Appellant represented by: John S. Berry, Attorney


ATTORNEY FOR THE BOARD

A. Gibson









INTRODUCTION

Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). 38 U.S.C.A. § 7107(a)(2) (West 2014).

The Veteran served on active duty from June 1976 to January 1979.

These matters are before the Board of Veterans' Appeals (Board) on appeal from rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO) in Lincoln, Nebraska.

In January 2015, the Board denied service connection for sleep apnea, which was appealed to the U.S. Court of Appeals for Veterans Claims (Court), and thereafter returned to the Board for additional development. Also in the Board's 2015 decision, the issues of increased ratings on extraschedular bases were referred for consideration. An extraschedular rating was denied by the Director of the Compensation Service, therefore these issues have returned to the Board for consideration, as reflected above. The issues of entitlement to service connection for right sided carpal tunnel syndrome (CTS), a right shoulder disability, a left shoulder disability, a lumbar spine disability, a cervical spine disability, headaches, and a head injury were remanded for development, and have returned for consideration.

In October 2015, the Veteran filed a timely appeal to a September 2015 statement of the case (SOC) addressing service connection for left CTS and a temporary total rating due to surgery for CTS. In April 2017, the Veteran filed a timely appeal to a February 2017 SOC addressing an increased rating for asthma with COPD and service connection for chest pain. Accordingly, as these issues have been timely appealed, the Board has added these four issues for consideration, and has expanded his chest pain claim to include as due to a heart disability, as reflected above.

In this decision, the Board is granting service connection for OSA, right shoulder, lumbar spine, cervical spine, and headaches. The Board is denying service connection for chest pain, but REMANDING the issue of whether any of his heart diagnoses are related to service. Also REMANDED for additional development are his claims for service connection for a left shoulder disability, right and left CTS, and a head injury, as well as his claim for a higher rating for asthma and COPD and for a temporary total rating due to surgery. These issues are addressed in the REMAND portion of the decision below and are REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. Obstructive sleep apnea (OSA) is aggravated by his service-connected bronchial asthma and COPD.

2. In resolving all doubt in his favor, his right shoulder, cervical spine, and lumbar spine were likely injured in the same accident that caused his service-connected right wrist and right elbow disabilities, and his status post SLAP tear of the right shoulder and his degenerative disc disease (DDD) of the cervical and lumbar spine are related to that injury.

3. His headaches are caused by his cervical spine DDD.

4. His chest pain has been related to his service-connected reflux disease, and he is being compensated for that symptom. To the extent that his asthma and COPD cause chest pain, he is also service-connected for those disabilities. To the extent that chest pain is caused by a heart disability, that issue is being remanded for additional development. "Chest pain" in and of itself is not a disability under VA law. 

5. His right wrist and right elbow disabilities are not exceptional and do not present unusual disability pictures, and do not cause marked interference with employment or frequent hospitalizations.




CONCLUSIONS OF LAW

1. The criteria are met for service connection for OSA, right shoulder status post SLAP tear, acromioclavicular joint arthrosis, acromioclavicular joint degenerative joint disease (DJD), cervical and lumbar spine degenerative disc disease, headaches. 
38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 3.310 (2016).

2. The criteria are not met for service connection for chest pain. He is compensated for chest pain through his service-connected reflux disease. 38 U.S.C.A. §§ 1110, 1131, 5107 (West 2014); 38 C.F.R. §§ 3.102, 3.303, 4.14, 4.114, DC 7346 (2016); Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999).

3. The criteria are not met for extraschedular ratings for the right wrist or for the right elbow. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321(b), 4.1, 4.3, 4.7, 4.45, 4.59, 4.71a, DCs 5206, 5207, 5208, 5214, 5215 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act (VCAA)

The Veteran has been provided with ample notice as to the evidence and information needed to substantiate his claims. 38 C.F.R. § 3.159 (2016). 

VA has complied with its duty to assist in developing this claim. 38 C.F.R. § 3.159(c). His relevant treatment records have been associated with the claims file. He has also been provided with VA examinations to in conjunction with his claims, which are adequate for adjudicatory purposes. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

The Veteran alleges that one of his VA examinations conducted in November 2015 was inadequate, as it was not conducted in an environment with distractions. He goes on to describe memory problems. To the extent that these comments pertain to the psychiatric examination given him for his service-connected major depression disorder, that issue is not currently under consideration. To the extent that he is referring to the VA head injury examination, that issue is being remanded. 

He has not alleged any prejudicial deficiencies in the development of these claims. Shinseki v. Sanders, 129 S. Ct. 1696 (2009).

Service connection

Service connection may be granted for any current disability that is the result of a disease contracted or an injury sustained while on active duty service. 38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303(a) (2016). Service connection requires competent evidence showing: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and, (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Service connection also is permissible on a secondary basis for disability that is proximately due to, the result of, or aggravated by a service-connected disability. 38 C.F.R. § 3.310(a) and (b) (2012). See also Allen v. Brown, 7 Vet. App. 439, 448 (1995). In order to prevail on the issue of entitlement to secondary service connection, there must be (1) evidence of a current disability; (2) evidence of a service-connected disability; and, (3) nexus evidence establishing a connection between the service-connected disability and the current disability. See Wallin v. West, 11 Vet. App. 509, 512 (1998).

Obstructive sleep apnea (OSA)

The Veteran has asserted that his OSA was caused or aggravated by any of his service-connected disabilities. An opinion was obtained by the Board in August 2016, with respect to whether his major depressive disorder (MDD), gastroesophageal reflux disease (GERD), right wrist tendonitis, right elbow, or a combination of these disabilities caused or aggravated his OSA. That examiner opined against a relationship to these disabilities. 

In September 2016, however, the Veteran was service connected for asthma, and later in February 2017, for COPD. In March 2017, a VA examiner opined that the Veteran's OSA was aggravated by his recently service-connected bronchial asthma with COPD. He indicated that OSA has more likely than not been aggravated by asthma and COPD. Those diagnoses involve constriction of the bronchioles (tiny airways of the lung), which will cause him to experience more apnea episodes. The examiner indicated that there is "ample" evidence to support the claim. 

The examiner further opined that it was not possible to determine the baseline of the OSA. Accordingly, service connection for obstructive sleep apnea is granted. 
38 C.F.R. § 3.310.

Right shoulder 

The Veteran is diagnosed with status post SLAP tear, which was repaired in 2010, along with AC joint arthrosis and DJD. 

He asserts his right shoulder disabilities, as well as other claimed disabilities, are a result of his service. Specifically, that he fell backwards off a firetruck while wearing his firefighting equipment, including tanks strapped to his back, as it was driving away, which caused injuries his back and right side. He asserts that this is the same incident wherein he injured his currently service-connected right wrist and right elbow. His STRs do not document this accident or any complaints of the right shoulder, but it is also fairly clear that his records are incomplete. It is inappropriate to conclude that the incident did not occur simply because it is not shown in an incomplete set of records. See Kahana v. Shinseki, 24 Vet. App. 428 (2011). The Veteran's father submitted a statement wherein he recalled the Veteran telling him about this incident when it occurred, in the spring of 1977. His STRs do confirm an injury to the right elbow in March 1977, but indicate he fell playing softball. He has asserted consistently that he was playing softball when he was called to fight a fire, and that he fell off the truck as it was leaving the playing field. His DD-214 confirms that he was a fire protection specialist. In light of all this evidence, the Board finds that his testimony regarding a fall from a fire truck ("fire truck injury") to be credible and probative.

In regard to a relationship to service, the October 2010 VA examiner attributed the Veteran's right shoulder disability to a work injury in or around 2001, which lead to the SLAP injury. He was asked to comment on whether his right shoulder had been aggravated by any of his service-connected disabilities, to which he did not respond. He did not consider the Veteran's assertions regarding his fall from a fire truck. This opinion, therefore, has no probative value.

The evidence also contains letters from his private chiropractors, however, who opined in July and December 2011 that the Veteran's right shoulder was injured when he fell from a firetruck while in service. The December 2011 opinion indicated that he fell backward and onto the right side, which both opinions noted corresponds to the issues that he has in the right shoulder. The December 2011 opinion further indicated that the Veteran had been receiving treatment for shoulder symptoms for some time, indicating that he had a chronic disability. Both opinions noted the Veteran had reduced motion, loss of strength, and pain. The Board finds this opinion probative.

The February 2013 VA examiner diagnosed right SLAP tear, which he attributed to degenerative wear and tear. He noted the Veteran had complained of right shoulder pain prior to the 2001 work injury, which he attributed to AC joint arthrosis, also due to degeneration. He indicated the current findings were not the result of trauma, and did not discuss the private July and December 2011 opinions. He further indicated that the shoulder diagnoses were not aggravated by his wrist and elbow disabilities because the shoulder diagnoses was due to degeneration. He did not explain how he arrived at the conclusion that the degenerative process was not aggravated by his other disabilities. Because of these shortcomings, this opinion has little probative value.

The November 2015 VA examiner diagnosed status post SLAP tear, and acromioclavicular (AC) joint arthrosis and degenerative joint disease (DJD). He opined that it was as likely as not that the Veteran injured his right shoulder at the same time he injured his right wrist and elbow, leading to his current disabilities. Although the STRs did not show this, the Veteran presented his theory to the examiner, who found it credible and a likely possibility. The Board notes that the examiner reviewed the claims file, and had knowledge of the symptoms reported in the 1990's and of the 2001 work injury. The Board finds this opinion probative.

In January 2016, the AOJ requested a more detailed opinion, noting to the examiner that the STRs did not show a fall from a firetruck, only an injury playing softball, which the Veteran has asserted over and over again was the result of incorrect documentation. The Board notes these comments to the examiner do not also point out that his STRs are incomplete, and appear to be asking for a more definite opinion than the law requires. See Alemany v. Brown, 9 Vet. App. 518, 519 (1996) (an "absolutely accurate" determination of etiology is not a condition precedent to granting service connection, nor is "definite" or "obvious" etiology; instead, this need only be an "as likely as not" proposition). The Veteran also argues that it was inappropriate to seek the additional evidence, to which the Board agrees. 
See Mariano v. Principi, 17 Vet. App. 305, 312 (2003) (it is not permissible to undertake further development for the purpose to obtain evidence against a Veteran's claim). The examiner responded that he would not be able to opine specifically without resorting to speculation. He continued, however, that perhaps the Veteran's MRI reports should show more severe findings if he was injured in 1977, without providing additional specificity on whether he thought it was or was not as likely as not related to service. Due to its inconclusiveness and the AOJ's exceeding the scope of the inquiry, the Board finds this opinion not probative. 

Accordingly, in light of the evidence, the Board finds that service connection for a right shoulder status post SLAP tear, with AC joint arthrosis and DJD, is warranted. 38 C.F.R. § 3.303.

Cervical spine

The Veteran asserts that his neck was also hurt in the fire truck injury. He is currently diagnosed with degenerative disc disease (DDD).

The December 2011 private opinion also addressed the Veteran's neck, indicating that the Veteran's symptoms were consistent with a flexion injury, which likely occurred when he fell onto his back off of the fire truck.

The November 2015 VA examiner, who reviewed the claims file and interviewed the Veteran, opined that the Veteran likely had some whiplash in the fall, which affects his neck to this day.

The AOJ obtained a January 2016 addendum to the November 2015 VA examination opinion, which the Board finds not probative, for the same reasons discussed above regarding the right shoulder.

Accordingly, in light of the evidence, service connection for cervical DDD is granted. 38 C.F.R. § 3.303.

Headaches

The November 2015 VA examiner opined that the Veteran's headaches were likely related to the whiplash injury and his current neck diagnosis. He noted the location of the headaches corresponded to the injury in service. 

The Veteran's chiropractor also attributed headaches to the neck injury in service and his current neck symptoms.

Accordingly, service connection for headaches is granted, secondary to his newly service-connected cervical spine. 38 C.F.R. § 3.310.

Lumbar spine

The November 2015 VA examiner opined that the Veteran's lumbar degenerative disc disease was less likely related to the incident in service. He indicated that the Veteran reported straining his back in 1979, while working at a meat packing plant after separation from service, which was an injury consistent with that kind of work. He further opined that his later injuries, including in 1990 and in 1997, were a result of that work injury, after service. He also opined that it was less likely that his service-connected right wrist and elbow caused or aggravated his low back, as there was nothing in the medical literature that supported such a relationship.

The December 2011 private opinion found it likely that the Veteran's low back symptoms were related to the fire truck injury, and that the Veteran's explanation of the injury corresponded to his later symptoms. 

Here, there are two opinions, one that attributes his later injuries and symptoms to an incident that occurred during service that is not documented. The other attributes later injuries and symptoms to an incident that occurred right after service, but again, is not documented. Both opinions support their findings with explanation supported by evidence from the record. Both incidents are found to have occurred. Under this circumstance, benefit of the doubt is resolved in his favor, and service connection for lumbar DDD is granted. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

Chest pain

The Veteran has variously asserted that his chest pain is associated with shortness of breath, with his reflux disease, and with his heart. See Statements received November 2005, May 2013, and September 2016. He has asserted that it is also related to asbestos exposure.

In regard to asbestos exposure, the evidence does not show that he has been diagnosed with an asbestos related disease. Brammer v. Derwinski, 3 Vet. App. 223 (1992). 

The Board also notes that pain in and of itself is not a disability for which service connection can be granted. Sanchez-Benitez v. West, 13 Vet. App. 282, 285 (1999); see also Brammer, 3 Vet. App. at 225. However, a claimant's description of pain can be used to establish disability if the pain is found to be caused by a disease or an injury that is also related to service. Brokowski v. Shinseki, 23 Vet. App. 79, 86-87 (2009). Claims that present distinct factual bases, such as medical disorders with different medical causes, may be distinguished and adjudicated independently, even if a Veteran feels that they are the same. See Tyrues v. Shinseki, 23 Vet. App. 166, 187 (2009), aff'd 631 F.3d 1380 (Fed. Cir. 2011); Boggs v. Peake, 520 F.3d 1330, 1337 (Fed. Cir. 2008).

As mentioned above, the Veteran is service connected for asthma and COPD, which were found to be the causes of his shortness of breath. Under 38 C.F.R. § 4.97, DC 6602 and 6604, asthma and COPD are rated on the results of pulmonary function testing, which measures the extent of breathing difficulties and identifies the presence of breathing defects, whether restrictive or obstructive. The rating criteria for these disabilities do not include chest pain.

He is also service-connected for reflux disease. In the Board's January 2015 decision and remand, his rating for GERD was increased to 30 percent based in part on his chest and substernal pain. 38 C.F.R. § 4.114, DC 7346. He is therefore being compensated for chest pain, and would not be eligible for additional compensation for this same symptom, which would result in pyramiding. 38 C.F.R. § 4.14. Duplicate compensation for the same symptom is prohibited. Id.

The Board is aware that the evidence does not clearly attribute chest pain to any specific disability. Indeed, in October 2012 and again in June 2016, he received a cardiac work up due to chest pain, but the results were not conclusive as to the cause of the pain. During the October 2012 incident, the examining physician indicated communication with the Veteran's treating physician who indicated that the Veteran had a history of nonspecific chest pain. At that time, it was also noted that his cardiac testing was normal. However, more recently, he has been diagnosed with cardiac disabilities. Accordingly, as chest pain may also be caused by a cardiac disability and the evidence for that claim is not adequately developed, that particular issue is being remanded. As chest pain is a merely a description of a symptom that he is already being compensated for, and not a diagnosis, that particular claim must be denied. 

However, the Board has inferred a claim for a heart disability, as reflected above, which must be remanded for additional development, as is the Veteran's right. 

Extraschedular ratings

As mentioned in the introduction, the Board referred the Veteran's right wrist and right elbow to the Director of the Compensation Service for a determination on whether an extraschedular rating was warranted. In support of the referral, the Board cited the Veteran's symptoms that are not enumerated in the rating schedule (weakened grip, tremors, and swelling of the wrist; locking of the elbow), and that the Veteran had been in fear of losing his job, prior to his retirement in July 2014, due to the number of absences that he took. The Director of the Compensation Service, in an October 2015 decision, denied an extraschedular rating, finding the Veteran's file did not show any unusual symptoms of the elbow or wrist. He also found that the evidence did not show interference with work or hospitalizations due to these disabilities. Accordingly, the Board may address the issue of an extraschedular rating for these disabilities. Floyd v. Brown, 9 Vet. App. 88, 95 (1996).

According to VA regulations, an extraschedular disability rating is warranted upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2016); see also Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

There is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. Thun v. Peake, 22 Vet. App. 111 (2008). First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the level of disability and symptomatology and is found to be inadequate, the Board must then determine whether the claimant's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a claimant's disability picture and that picture also has related factors such as marked interference with employment or frequent periods of hospitalization, then to accord justice, the claimant's disability picture requires the assignment of an extraschedular rating. Id.

In regard to the right wrist, as mentioned, he has complained of pain and tenderness, weakened grip, tremors in the hand, and occasional swelling. The right side is his dominant side. He has daily flares of pain that pain medication does not control. He complains of difficulty typing. He has difficulty grasping and will occasionally drop things. He has increased pain and weakness with repetitive use and during flares. His worst range of motion measurements were 30 degrees extension shown at the July 2007 VA examination, and his 60 degrees of palmer flexion at the July 2014 VA examination. 

He has been shown to have more limitation in regard to active extension (dorsiflexion) than compared to passive extension. In November 2014, his active extension was to 45 degrees, and passive extension to 75 degrees (normal extension is to 70 degrees). In August 2016, he reported not being able to fully extend his wrist unless he used his other hand to complete the range. On examination, he had full passive range of motion, and some active range of motion (exact measurements were not made), but that he only had 3/5 strength in extension against active resistance. His wrist disability results in decreased manual dexterity and interferes with his ADL's. It also interfered with work, including steering and driving and lifting and carrying, as he was a driver and deliveryman. 

In regard to the right elbow, he complains of pain, swelling, and popping and clicking, which has been identified as crepitation. His worst range of motion measurements were to 135 degrees of flexion at the November 2015 VA examination, and to 5 degrees less than full extension at an August 2016 VA appointment. He complains that his elbow interferes with ADL's and that, as of March 2015, he was unable to providing voluntary driving services for his Veterans Service Organization (VSO).

Turning to the first step of the extraschedular analysis, the Board finds that all the symptomatology and impairment caused by the right wrist and right elbow disabilities are specifically contemplated by the schedular rating criteria, and that an extraschedular rating is not required. The schedular rating criteria specifically provide for ratings based on limitation of wrist and elbow motion (dorsiflexion and palmar flexion; flexion, extension, pronation, and supination), including as due to pain and other orthopedic DeLuca and 38 C.F.R. §§ 4.40, 4.45, 4.59 factors, which are incorporated into the schedular rating criteria. See 38 C.F.R. § 4.71a, Plate I; see also 38 C.F.R. § 4.71a DCs 5214, 5215, 5206, 5207, 5208, 5213; 38 C.F.R. § 4.71a, DC 5003 (contemplates pain and noncompensable limitation of motion); Schafrath v. Derwinski, 1 Vet. App. 589, 592 (1991) (read together with schedular rating criteria, 38 C.F.R. §§ 4.40 and 4.45 recognize functional loss due to pain); Deluca v. Brown, 8 Vet. App. 202, 206-07 (1995) (functional limitations are applied to the schedular rating criteria to ascertain whether a higher schedular rating can be assigned based on limitation of motion due to pain and during flare-ups, and should be expressed in schedular rating terms of degree of range-of-motion loss); Burton v. Shinseki, 25 Vet. App. 1, 4 (2011) (the majority of 38 C.F.R. § 4.59, which is a schedular consideration rather than an extraschedular consideration, provides guidance for noting, evaluating, and rating joint pain); Sowers v. McDonald, 27 Vet.App. 472 (2016) (38 C.F.R. § 4.59 is limited by the diagnostic code applicable to the claimant's disability, and is read in conjunction with, and subject to, the relevant diagnostic code); Mitchell v. Shinseki, 25 Vet. App. 32, 33-36 (2011) (pain alone does not constitute functional impairment under VA regulations, and the rating schedule contains several provisions, such as 38 C.F.R. §§ 4.40, 4.45, 4.59, that address functional loss in the musculoskeletal system as a result of pain and other orthopedic factors when applied to schedular rating criteria); see also Mitchell, 25 Vet. App. at 45 (Footnote 2) and Vogan v. Shinseki, 24 Vet. App. 159, 161 (2010) (when a condition is not listed in the VA disability schedule, VA may undertake rating by analogy where the disability in question is analogous in terms of the functions affected, the anatomical localization, and the symptomatologies of the ailments). 
 
In this case, for the entire appeal period, considering the lay and medical evidence, the Board finds that his service-connected right wrist disability has manifested by symptoms and impairment that most nearly approximates palmar flexion limited in line with forearm (see 38 C.F.R. § 4.71a, DC 5215), including as due to pain and other orthopedic factors, as well as functional impairment of limited ability to lift, carry, conduct some household chores and other ADL's, and use a steering wheel. The Veteran has indicated that the bulk of functional limitation is due to right wrist pain, but also weakness and swelling, which are contemplated as orthopedic factors in the schedular rating criteria. Indeed, all of these activities require movement of the wrist in dorsiflexion or palmer flexion, which is contemplated by the schedular rating criteria based on limited motion to include as due to pain or other Deluca factors. See 38 C.F.R. §§ 4.40, 4.45, 4.59, DeLuca; see also 38 C.F.R. § 4.71a, DC 5003 (contemplates pain and noncompensable limitation of motion). 

In regard to the elbow, for the entire appeal period, the Board finds that his disability has manifested with symptoms and impairment that most closely approximates limited flexion to 100 degrees (see 38 C.F.R. § 4.71a, DC 5206), including as due to pain and other orthopedic factors, as well as functional impairment of limited ability conduct some household chores and other ADL's, and to use a steering wheel. As above, the Veteran has attributed the bulk of his functional loss to pain, but also to swelling and crepitation, which are contemplated as orthopedic factors in the schedular rating criteria. Indeed, as above, these activities require flexion and extension of the elbow and forearm, which is contemplated by the schedular rating criteria based on limited motion to include as due to pain or other Deluca factors. See 38 C.F.R. §§ 4.40, 4.45, 4.59, DeLuca; see also 38 C.F.R. § 4.71a, DC 5003 (contemplates pain and noncompensable limitation of motion). 

In sum, all of the symptoms and impairment of the wrist and elbow described above are part of or similar to symptoms and impairment listed under the schedular rating criteria. See 38 C.F.R. § 4.20 (schedular rating criteria provides for rating by analogy based on similar functions, anatomical location, and symptomatology); Mauerhan v. Principi, 16 Vet. App. 436 (2002) (the schedular rating criteria also include analogous symptoms that are "like or similar to" listed schedular rating criteria). Accordingly, his symptoms are not exceptional and do not present an unusual disability picture.

The Veteran asserts that his wrist and elbow interfered with his employment, however, the record does not show marked interference. He asserts that he was not able to become a firefighter because of his wrist and elbow, but the evidence shows he was able to obtain other employment and worked until retirement in July 2014. His application for Social Security Administration (SSA) disability benefits was not based on or supported by his wrist or elbow disabilities. The Board does not doubt some interference, as he was a driver and deliveryman, and as his right side is his dominant side, but the evidence does not show extended absences or periods of light duty that would signify such interference. The only surgeries on his wrist were for carpal tunnel syndrome, which has not been found to be related to the right wrist, and the elbow has not had a surgery (although, in October 2016, arthroscopy was discussed as a possibility). Thun, supra.

The record does not show that his elbow and wrist combine to create an unusual disability picture, or combine with any of his other disabilities to create an unusual picture or exception pattern of symptoms, and he has not so alleged. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). 

Accordingly, an extraschedular evaluation is not warranted for the right wrist or right elbow.



ORDER

Service connection is granted for obstructive sleep apnea.

Service connection is granted for right shoulder status post SLAP tear, acromioclavicular joint arthrosis, and acromioclavicular joint degenerative joint disease (DJD).

Service connection is granted for cervical and lumbar degenerative disc disease.

Service connection is granted for headaches.

The claim of entitlement to service connection for chest pain is denied.

The claims of entitlement to higher ratings on an extraschedular basis for the right wrist and the right elbow are denied.



REMAND

The Veteran's remaining claims require additional development.

In regard to a cardiovascular or heart disability, an updated VA medical opinion must be obtained. The November 2016 VA examination addendum opinion lists diagnoses of left ventricular hypertrophy (LVH) and cardiomegaly, due to non-obstructive coronary artery disease (CAD). That examiner opined that his CAD was caused by hyperlipidemia and diabetes, but he did not explain how he knew that, nor did he provide additional opinions on aggravation. An updated opinion must be obtained.

In regard to his claim for service connection of the left shoulder, the November 2015 VA examination is not responsive to the Board's January 2015 remand directives, which asked for a nexus opinion. Specifically, the examiner indicated there was no left shoulder disability, and did not provide an opinion. However, the January 2012 VA examiner diagnosed left shoulder degenerative joint disease with tendonopathy. An opinion on a relationship must be obtained.

In regard to his claim for left and right carpal tunnel syndrome (CTS), an updated VA medical opinion must be obtained. The November 2015 VA examination only addressed the right CTS, and did not provide an opinion on whether right CTS was aggravated by any other disabilities. The September 2015 VA examination found it less likely that left CTS was related to his service, but noted that cervical spine disabilities are a risk factor for developing CTS. He is now service connected for cervical DDD. On remand, updated medical opinions must be obtained. As this claim is inextricably intertwined with his claim for a temporary total rating for convalescence purposes, that claim is remanded as well. 

In regard to a head injury, it is unclear whether the Veteran is diagnosed with a traumatic brain injury or the residuals of a head injury. On remand, a medical opinion clarifying his current diagnosis and symptoms must be obtained.

In regard to his asthma and COPD, an updated VA examination must be conducted that takes into consideration the applicable criteria for both asthma and COPD (for example, the criteria for COPD under DC 6604 allows for consideration of the DLCO number, which was not listed in the February 2017 VA examination). Further, a PFT was conducted at the VAMC in March 2015, which must be interpreted for the Board. 

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Ask the Veteran to identify all treatment he has received for his asthma and COPD, and make arrangements to obtain all records not already associated with the claims file.

2. After receipt of records, forward the Veteran's claim file to an appropriate examiner for an opinion on whether it is as likely as not (50 percent or greater probability) that any heart diagnosis, including non-obstructive CAD, cardiomegaly, and LVH, are related to his service. The examiner is asked to review the claims file prior to so opining.

It is up to the examiner's discretion as to whether an updated medical examination should also be conducted, and if an examination is not necessary, please explain why.

In regard to the November 2016 VA addendum opinion, the examiner is asked to provide a supplemental opinion explaining whether it is as likely as not that these diagnoses (or any other heart disability since diagnosed) are related to service. He asserts that inhalation of burning material and being a firefighter in service exposure him to toxic substances, which caused his heart problems. 

The examiner is also asked to provide an opinion on whether it is as likely as not (50 percent or greater probability) that any of his other service-connected disabilities have caused or aggravated (that is, caused a permanent increase in severity that is beyond the normal progression of the disease) his heart diagnoses. The Veteran is service connected for major depressive disorder, reflux disease, bronchial asthma, COPD, tendinitis of the right wrist, residuals of right elbow fracture, obstructive sleep apnea, residuals of right shoulder SLAP tear, cervical degenerative disc disease, lumbar degenerative disc disease, and headaches.

The examiner is asked to support all opinions with explanation that refers to medical literature or facts contained within the record.

3. Forward the Veteran's claim file to an appropriate examiner for an opinion on whether it is as likely as not (50 percent or greater probability) that any left shoulder disability is related to service. The examiner is asked to review the claims file prior to so opining.

It is up to the examiner's discretion as to whether an updated medical examination should also be conducted, and if an examination is not necessary, please explain why.

The Veteran was diagnosed with left shoulder DJD and tendonopathy at the January 2012 VA examination. The examiner is asked whether it is as likely as not that his left shoulder disabilities were caused or aggravated (that is, caused a permanent increase in severity beyond the normal progression of the disease) by his service-connected right wrist and elbow disabilities, in that he compensated with his left arm for the disability of the right arm. 

Although required to review the entire record, the examiner's attention is directed to evidence showing he had pain and numbness of the left shoulder going back at least to October 1996, and was diagnosed with left biceps tendonitis in November 1996. In February 2000, his physician attributed his left shoulder pain to muscle rather than the joint. The June 2000 VA examiner, in taking the Veteran's history, took note of the Veteran's complaints that he was using his left arm more to compensate for the pain in his right arm, and that he had developed left biceps tendonitis. However, that examiner he did not adequately provide an opinion on whether the overuse of the left arm resulted in the biceps tendonitis. In December 2005, he injured his left shoulder when lifting a computer, and was again diagnosed with biceps tendonitis. In September 2011, he was diagnosed with left biceps tendon rupture after an on-the-job injury. That physician did not think the injury was serious, but did note that the Veteran used his left arm more because of his service-connected right arm disabilities. The January 2012 attributed left shoulder DJD to the September 2011 injury, without any discussion of his medical history. The examiner is asked whether it is as likely as not that overuse of the left arm, which is not his dominant side, because of his right arm disabilities, caused or aggravated left shoulder DJD and tendonopathy.

The examiner is also asked to provide an opinion on whether it is as likely as not (50 percent or greater probability) that any of his other service-connected disabilities have caused or aggravated (that is, caused a permanent increase in severity that is beyond the normal progression of the disease) his left shoulder diagnoses. The Veteran is service connected for major depressive disorder, reflux disease, bronchial asthma, COPD, tendinitis of the right wrist, residuals of right elbow fracture, obstructive sleep apnea, residuals of right shoulder SLAP tear, cervical degenerative disc disease, lumbar degenerative disc disease, and headaches.

4. Forward the Veteran's claim file to an appropriate examiner for an opinion on whether it is as likely as not (50 percent or greater probability) that right and/or left carpal tunnel syndrome are related to service. The examiner is asked to review the claims file prior to so opining.

It is up to the examiner's discretion as to whether an updated medical examination should also be conducted, and if an examination is not necessary, please explain why.

The Veteran asserts his CTS diagnoses are related to his other service-connected disabilities. The examiner is therefore asked to provide opinions on whether it is likely as not that either CTS was caused or aggravated (that is, caused a permanent increase in severity beyond the normal progression of the disability) by his other service connected disabilities. The Veteran is service connected for major depressive disorder, reflux disease, bronchial asthma, COPD, tendinitis of the right wrist, residuals of right elbow fracture, obstructive sleep apnea, residuals of right shoulder SLAP tear, cervical degenerative disc disease, lumbar degenerative disc disease, and headaches.

The examiner is asked to review the record, but the examiner's attention is directed to the following pertinent information: In January 1989, he complained of right hand numbness, and the physician indicated a history of elbow fracture; In June 1997, a VA treatment record notes questionable carpal instability secondary to a fall; and in December 1997, a VA treatment record notes right hand numbness with a history of elbow troubles. 

The September 2013 VA examiner opined, in part, that the presence of CTS in both wrists weighed against a relationship between the right CTS and his service-connected right wrist and elbow disabilities. He did not address whether the right CTS, first noted in June 2000, prior to the development of left CTS, was aggravated by his other disabilities. It appears that left CTS was not diagnosed until 2013. 

The September 2015 VA examiner indicated that cervical diagnoses are a risk factor for CTS. The Veteran is now service-connected for cervical DDD, thus this statement must be addressed. 

All opinions must be supported with explanation citing to relevant literature or evidence contained within the record.

5. Schedule the Veteran for an appropriate examination for an opinion on whether he has a TBI or diagnosed residuals of a head injury, other than headaches (which are service-connected as of this decision), and if so, whether it is at least as likely as not (50 percent probability or greater) that the diagnosis (or, diagnoses) is related to service. The examiner is asked to review the claims file prior to the examination.

The Veteran alleges having hit his head when he fell from a fire truck while in service. This incident is not listed in the STRs but that is not dispositive of the inquiry. The examiner is asked first to conduct the appropriate diagnostic testing to determine a diagnosis. To that end, a head CT in December 1996 was normal, and an MRI in April 2011 was also found to be normal. If the Veteran has a diagnosis of a TBI or is found to have any residuals of a head injury, other than headaches (which have already been service connected), the examiner is asked whether it is as likely as not that the diagnosis is a result of the injury in service. The examiner is asked to elicit from the Veteran details of the injury, and to use his statements to form an opinion.

All opinions must be supported with explanation citing to relevant literature of evidence contained in the record. 

6. Schedule the Veteran for an updated VA examination for a report on the current severity of his asthma and COPD. A complete examination and PFT must be conducted, including FEV-1, FEV-1/FVC, DLCO. The March 2015 and August 2016 PFTs must be interpreted for the Board (that is, list the findings in percentages, as set forth in the criteria set forth in 38 C.F.R. § 4.97, DCs 6602 and 6604). 

7. Following completion of the above directive, review the claims file to ensure compliance with this remand. If the examination report does not include adequate responses to the specific opinions requested, it must be returned to the examiner for corrective action.

8. Finally, after completing all of the above, and any additional development deemed warranted, readjudicate the claim on appeal. If the benefit on appeal remains denied, furnish the Veteran and his representative with a copy of a supplemental statement of the case (SSOC) and allow an appropriate time for response. Thereafter, return the file to the Board for further appellate consideration.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs